IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RONALD SMITH, § | |
| *Plaintiff* § | |
| § | |
| v. § | CIVIL ACTION NO.5:23-CV-00881-OLG |
| § | |
| GUADALUPE COUNTY, TEXAS, § | |
| HUNTER SAENZ, ROBERT LOCKER, § | |
| JIMMY GONZALEZ § | |
| *Defendants* § | |

**DEFENDANTS GUADALUPE COUNTY, TEXAS AND HUNTER SAENZ'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Guadalupe County and Hunter Saenz, by and through the undersigned counsel of record, file this Motion to Dismiss under Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In support thereof, Defendants show the Court as follows:

### I.   BACKGROUND

This case arises from a police encounter with Plaintiff and Defendants Saenz, Locker, and Gonzalez, acting as law enforcement officers of Guadalupe County. Plaintiff alleged that he was out for a jog from his home in Bulverde, Texas to prepare for a marathon race. He was at the boundary of Guadalupe County and Comal Counties at Highway 46. Defendant Saenz observed Plaintiff, and noted that it was "odd" and dangerous for someone to be jogging on the highway. Additionally, Plaintiff was not following proper traffic regulations.  Saenz tried to initiate contact with Plaintiff but Plaintiff claims that he did not notice him until he reached the Guadalupe County Cemetery. Plaintiff alleged that Saenz approached with his gun drawn (a JPX pepper spray device), and another defendant, Jimmy Gonzalez, also appeared, brandishing a gun. Plaintiff attempted to

evade the law enforcement officers and Saenz applied pepper spray to Plaintiff's face. Plaintiff was eventually arrested for evading arrest.

## II. STANDARD OF REVIEW

A pleading must contain a "short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). While this does not require the plaintiff to present "detailed factual allegations" to support his claim, the pleading may not be a simple recitation of the elements of a cause of action, but must contain sufficient facts, accepted as true to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bel Atl. Corp. v. Twombly*, 550 U.S. 544-556-57 (2007). This standard asks for more than the possibility of the defendant's liability and requires the Plaintiff to show the plausibility of entitlement to relief under the law. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 (plausibility standard requires more than the previous "probability standard").

To survive a motion to dismiss, the complaint must present sufficient facts that would allow the court to draw the reasonable inference that the defendant is liable for alleged misconduct. *See Iqbal*, 556 U.S. at 678. While the court must take all allegations contained in the complaint as true, mere conclusory statements will not suffice. *Id.* Further, the court is not required to accept as true any legal conclusions couched as factual allegations. *Id.*

## III. ARGUMENTS AND AUTHORITIES

### A. Defendants are Entitled to Qualified Immunity

Defendants are entitled to qualified, official, and sovereign immunity. A government officer exercising discretionary authority is entitled to the defense of qualified immunity unless at the time, and under the circumstances of the challenged conduct, all reasonable officers would

have realized that the challenged conduct was prohibited by the federal law on which the suit is founded.

Qualified immunity shields from liability officials who perform their duties reasonably and applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan,* 555 U.S. 223, 236, (2009); s*ee also Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (Public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity). Qualified immunity protects officers sued in their individual capacity unless the alleged act violates a constitutional right that was clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998).

The test for qualified immunity has two parts that a plaintiff must prove in order to prevail. First, the Plaintiff must establish that a public official's conduct deprived the Plaintiff of a clearly established constitutional right. *Id.* at 466-7. "Clearly established" means sufficiently clear to put a reasonable officer on notice that his conduct may violate a person's rights. *Id.; see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir.1989); *Melear v. Spears*, 862 F.2d 1177, 1187 (5th Cir.1989).

The second question for the defense of qualified immunity is whether the official's conduct was objectively reasonable. *See Sanchez*, 139 F.3d at 467. Even if an official violates a person's civil rights, the official may still be entitled to qualified immunity if the conduct was objectively reasonable. *Id.*, *citing Mouille v. City of Live Oak,* 918 F.2d 548, 551 (5th Cir.1990). "Objectively reasonable" means, given the totality of the circumstances confronting the official, viewed objectively, was the action justified. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). Trial courts are free to answer these two questions in any order they choose. *Callahan*, 555 U.S. at 236. In this

case, the Defendants were engaged in the exercise of discretionary duties and acted within the course and scope of their duties as law enforcement officers employed by Guadalupe County, Texas, with objectively reasonable expectations that their conduct was reasonable, lawful, and necessary in light of all attendant circumstances. At no time did the Defendants violate a clearly established constitutional right. Nor were any of the officers' actions objectively unreasonable. Therefore, the Defendants are entitled to qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

Plaintiff contends that there is no qualified immunity for Defendants because he was unarmed and because Saenz was not dispatched. Neither of these arguments are relevant to the analysis of qualified immunity. Saenz had no way of knowing whether Plaintiff was armed and proceeded with appropriate caution, and then with appropriate alarm when Plaintiff continued to run away from him. Further, Saenz would not be required to be on a dispatch call to be a patrolling officer.

Based on information that Plaintiff was running in an area that was not a normal jogging area, and running from them, the officers at the scene could reasonably believe that the stop presented a potentially dangerous encounter, and concerns for their safety outweigh the intrusion on privacy of Plaintiff. Therefore, Saenz acted reasonably and without violation of Plaintiff's rights by stopping him on his run. When Plaintiff continued to run away, Saenz had the right to use some degree of physical coercion or threat to stop him.

Plaintiff has failed to plead specific facts which establish that all reasonable officials in each of their respective circumstances would have known that their conduct violated the Plaintiff's clearly established constitutional or statutory rights. *Salazar-Limon*, 826 F.3d at 277. Plaintiff has failed to plead specific facts which, if proved, would overcome the officers' entitlement to qualified

immunity from suit. Therefore, the claims against these individual officers are barred by the doctrine of qualified immunity and must be dismissed for this reason.

### B.  Plaintiff has Failed to State a Plausible Claim Against Guadalupe County

Plaintiff alleges that Guadalupe County is liable in this suit for failing to provide adequate training for Defendants which would have prevented the alleged violations of their rights resulting from his conduct during the incident which gives rise to their suit.

A municipality may not be held liable under § 1983 on a theory of respondent superior. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978), but instead only for acts that are directly attributable to it "through some official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). For a municipality to be liable for the actions of its employees under based on a claim arising from a municipality's failure to adopt an adequate training policy, a plaintiff must demonstrate that: "(1) [the municipality's] training policy procedures were inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation]." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

Plaintiff states his failure-to-train claim in identical conclusory paragraphs alleging that the County failed to "properly train" Defendants in varying levels of force. Plaintiff's rights were not violated by Saenz's stop of a man running in an area not made for running. The Fifth Circuit has specifically held that "when [governmental] officers have received the training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate. *Sanders-Burns*, 594 F.3d at 381-82. Saenz's stop does not reflect a lack of the proper minimum legal training for a police officer.

Plaintiff provides no factual specificity whatsoever for the failure-to-train claim and the Court cannot "accept as true [his] conclusory allegations or unwarranted deductions of facts." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Merely alleging Individuals Defendants' lack of training in reacting to Plaintiff does not establish municipal liability and the Supreme Court has specifically held that allegations of this nature are insufficient to impose *Monell* liability. *See Connick v. Thompson,* 563 U.S. 51, 68 (2011). The Petition does not identify any formal policy or persistent and widespread practice that was the "moving force" behind a constitutional violation. *See Piotrowski,* 237 F.3d at 578. Without facts to establish such a policy or practice, there is no basis for the County's liability under § 1983. *See Hill v. Guadalupe Co. Jail*, No. 3-05-CV-1342-M, 2006 WL 785496, at *2 (N.D.Tex. Mar. 28, 2006) (Kaplan, J.).

    **C.**    **Saenz did not violate Plaintiff's Fourth Amendment Rights**

        **1.**    **Excessive/Deadly Force**

Plaintiff's claim of excessive force is to be analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395. In order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Knight v. Caldwell*, 970 F.2d 1430, 1432-33 (5th Cir.1992). In evaluating whether plaintiff has stated an excessive force claim the court should consider the following: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 112 S.Ct. 995, 999 (1992). Courts, however, should not second-guess an officer's judgment, should not expect the officer to have followed the

most prudent course of conduct as judged by 20/20 hindsight, and should not forget that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving...." *Graham v. Connor*, 490 U.S. 386, 390. Accordingly, the proper inquiry is to ask whether any reasonable officer under the same circumstances confronting the defendant could have taken the same actions. *Id.*

Here, in considering the factors related to excessive force, the Defendants do dispute that Plaintiff was injured. He was immediately taken to the hospital to be examined after the use of pepper spray and was cleared immediately, showing no signs of injury. Further, force was necessary because of Plaintiff's odd and erratic behavior in running along a highway and through private property. Once Plaintiff started running from the officers, the need for force was escalated and warranted use of a pepper ball gun to subdue him.

### 2. False Arrest

An individual may be arrested without a warrant if there exists probable cause to effect such an arrest. If probable cause to arrest for an offense existed at the time of arrest, there is no cause for unlawful arrest pursuant to 42 U.S.C. §1983.29 Thus, addressing Plaintiff's false arrest claims under the Fourth Amendment requires an examination of whether there existed probable cause to arrest Plaintiff. In other words, if there existed probable cause to arrest Plaintiff, then the arrest was not illegal, rendering Plaintiffs' false arrest claim groundless.

To constitute probable cause to arrest, an officer should have knowledge or trustworthy information which would create a belief in a person of reasonable caution that an offense has been committed by the potential arrestee. The validity of an arrest turns upon the probable cause information known to the officer at the time of the arrest. In fact, even a mistaken, but reasonable,

belief on the part of an officer as to the existence of probable cause will not support his imposition of liability for false arrest. Probable cause exists when the facts within the officer's knowledge and facts of which he has reasonably reliable information would be sufficient to cause a prudent person to believe that the suspect has committed or is committing a criminal offense. Probable cause may be present even though the evidence before the officer would be insufficient to support a finding of guilt necessary to convict.

Plaintiff alleges a claim for false arrest because it was not illegal to go jogging. However, Plaintiff was arrested for evading arrest, which he did by continuing to run from the police after he noticed that they were present. Running from the police would be sufficient to give rise to probable cause based on Saenz's knowledge and facts at the time that he witnessed Plaintiff running.

### 3.     Unreasonable Search

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures..." is protected by the Fourth Amendment to the U. S. Constitution. If a particular government intrusion was not addressed by the common law at the time the amendment was enacted, the lawfulness of the intrusion is determined by balancing the nature of the intrusion against the supporting government interests compelling the intrusion. *See, e.g., Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652-653 (1995). "[N/o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched.... " Probable cause exists when the facts within the officer's knowledge and facts of which he has reasonably reliable information would be sufficient to cause a prudent person to believe that the suspect has committed or is committing a criminal offense. Probable cause may be present even though the evidence before the officer would be insufficient to support a finding

of guilt necessary to convict. Here, Saenz saw a man running along the highway, and then running from the police, and that would give rise to sufficient probable cause to believe that a man running from the police had committed or would commit a criminal offense.

### 4. Malicious Prosecution

To the extent the plaintiff has asserted an independent claim of malicious prosecution, it is not actionable. The Fifth Circuit has held that malicious prosecution itself is not a violation of the United States Constitution, and to proceed under § 1983, such a claim must rest upon a denial of rights secured under federal and not state law. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). "No such freestanding constitutional right exists." Id. at 945. The plaintiff is essentially saying that the deadly conduct charge against him was made without probable cause. Causing charges to be filed without probable cause is not enough, without more, to state a constitutional violation. *See Scott v. Caldwell*, 2008 WL 2329595, *3 n. 10 (E.D. Tex. 2008). Moreover, the lack of probable cause is a basic element to pursing any sort of malicious prosecution claim. *Scott v. Caldwell*, 2008 WL, 2008 WL 2329595 at *3 n. 10; *Hawkins v. Texas*, 2007 WL 983145, *6 (E.D. Tex. 2007). Since there is probable cause for the plaintiff's arrest on several bases, the plaintiff's malicious prosecution claim fails.

Given the information contained in Plaintiff's Original Petition, Plaintiff did not state a claim that was entitled to relief that was plausible on its face. Defendant Saenz and Guadalupe County are entitled to sovereign immunity based on their actions on the date of the encounter.

### IV.    CONCLUSION AND PRAYER

For these reasons, Defendants pray that all relief requested by Plaintiff be denied, and that Defendants recover their costs and attorney's fees, along with such other relief to which they may show themselves entitled.

/s/ Susana Naranjo-Padron_____
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Susana Naranjo-Padron
SBN: 24105688
s.naranjo-padron@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
1301 Nueces Street, Suite 201
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this the 26th day of July 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Andres Cano
1140 South Laredo
P.O. Box 830742
San Antonio, Texas 78204
(210) 320-2020
(210) 263-7667 (fax)
Dx4829@gmail.com

/s/ Susana Naranjo-Padron\_\_\_\_
Susana Naranjo-Padron