## IN THE UNITED STATES COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **RONALD SMITH**<br>**Plaintiff.** | \| |
| **v.** | \| |
| **GUADALUPE COUNTY, TEXAS,**<br>**HUNTER SAENZ,**<br>**ROBERT LOCKER,**<br>**JIMMY GONZALEZ,**<br>**Defendants.** | \|    **5:23-cv-00881-OLG** |

**I.**     <u>**CASE HISTORY**</u>

This is a case based upon violations of Plaintiff's Constitutional rights by these Guadalupe County Defendants during an unlawful arrest on June 27, 2021. This 42 U.S.C. 1983 suits brings claims under the 4th Amendment for excessive force, deadly force, unlawful arrest, and malicious prosecution. Further, Plaintiff brings Supervisory liability claims, and claims against Guadalupe County, Texas under *Monell v. New York City Dept. of Soc. Svcs.,* 436 U.S. 658 (1978). This case was filed on June 15, 2023 in Texas Court on June 15, 2023 as No. 23-1551-CV-E, and removed to federal court on July 17, 2023.

**II.**     <u>**FEDERAL 12(b)(6) STANDARD**</u>

Generally, Rule 12(b)(6) Motions are met with disfavor in federal courts, *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000). Motions to Dismiss under Rule 12(b)(6) are disfavored, and rarely granted, *Sosa v. Coleman,* 646 F.2d 991 (5th Cir. 1981). A complaint does not need detailed factual allegations, just a short, plain statement for relief, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Factual allegations are accepted as true to see whether a claim is **plausible** on its face, *Gonzalez v. Kay,* 577 F.3d 600 (5th Cir. 2009). Allegations are viewed most favorably toward the Plaintiff, *Gentilello v. Rege,* 627 F.3d 540 (5th Cir. 2010). The

Court must draw all reasonable inferences from those facts in the Plaintiff's favor, *Lovick v. Ritemoney Ltd.,* 378 F.3d 433 (5th Cir. 2004).

**III.**        <u>**42 U.S.C. 1983 CONSTITUTIONAL VIOLATIONS**</u>

The 42 U.S.C. 1983 statute provides relief for violations of Constitutional rights, or violations of federal statutes. In our context, we are concerned with Constitutional violations committed by law enforcement, *Monroe v. Pape,* 365 U.S. 167 (1961), and violations of rights guaranteed by the U.S. Constitution, *Buckley v. City of Redding,* 66 F.3d 188 (9th Cir. 1995).

Plaintiff pled: (1) violations of Constitutional rights, *Saucier v. Katz,* 533 U.S. 194 (2001); (2) clearly established at the time of the violations, *Scott v. Harris,* 500 U.S. 372 (2007); (3) by actors under the color of state law, *West v. Atkins,* 487 U.S. 42 (1988).

**IV.**              <u>**QUALIFIED IMMUNITY**</u>

Qualified Immunity is an affirmative defense which can be asserted by State actors and officials. Qualified Immunity must be pled by the Defendant, *Siegert v. Gilley,* 500 U.S. 226 (1991). Qualified Immunity has 2 components: (1) whether the Plaintiff has pled a violation of a Constitutional right; and (2) whether the right was clearly established. It does not matter in which order they are analyzed by a District Court, *Pearson v. Callahan,* 555 U.S. 223 (2009). Smith pled: (1) violations of Constitutional rights, *Saucier v. Katz,* 533 U.S. 194 (2001); which were (2) clearly established at the time of the violations, *Scott v. Harris,* 500 U.S. 372 (2007).

A government official will not be shielded from liability for acts that clearly violated Constitutional rights, *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Qualified Immunity **<u>will not shield</u>** those who **<u>are plainly incompetent or knowingly violate the law</u>**, *Malley v. Briggs,* 475 U.S. 335 (1986).

**V.**        <u>**PLED FACTS OVERCOMING QUALIFIED IMMUNITY**</u>

**(Doc. 7: §7; ¶ 1-33 inclusive; pp. 16-17)**

**a.** SMITH was not violent or aggressive against the Deputies, or the public.  **b.** SMITH was passive. **c.** SMITH had no weapons, contraband, or dangerous items on his person. **d.**

SAENZ was not dispatched on a service call, or a 911 request to contact SMITH. **e.** SMITH and SAENZ never communicated with one another prior to SMITH's actual arrest. **f.** SMITH was exercising on the side of Highway 46, not breaking the law on June 27, 2021. **g.** SAENZ came up with 5 different versions as to why he felt compelled to contact SMITH. **h.** SAENZ and GONZALEZ pointed loaded firearms at an unarmed and passive SMITH. **i.** At worst, SAENZ and GONZALEZ thought SMITH may have walked across other people's property. **j.** SAENZ then switched to a "Pepper Gun" and shot SMITH on the side of his face, near the temple. **k.** The irritants spewed a white powder irritant on SMITH's face, causing respiratory distress. **l.** SAENZ and GONZALEZ then leaped upon SMITH's back, pushing him face first on the ground. Both men weighed well over 250 pounds each.

**m.** LOCKER ordered GONZALEZ to contact the neighboring property owners. **n.** None of the property owners were interested in pressing any charges against SMITH, because they never saw him on their property, he was not presently on their property, and nothing was harmed. **o.** GONZALEZ reported this to LOCKER. **p.** About this time, the Deputies became aware SMITH had Dyslexia. **q.** This condition made it difficult for SMITH to communicate and provide information. **r.** Instead of trying to make accommodations, like allowing SMITH to retrieve his identification, or obtaining the information from his wife, the Deputies chose to arrest SMITH. **s.** LOCKER acknowledged on camera that SMITH was not breaking the law by exercising on the side of the road. But, LOCKER thought it "was weird." **t.** LOCKER and SAENZ conspired to arrest SMITH and file criminal charges against him. **u.** SAENZ swears out a criminal complaint against SMITH for "evading arrest." There is no underlying cause SMITH is supposed to evade arrest for. **v.** This turned into Misdemeanor Cause CCL-21-0657 in Guadalupe County. **w.** This Cause was dismissed by the District Attorney on August 11, 2022. **x.** SMITH entailed legal expenses fighting the criminal charge, totaling over $5000.00. **y.** SMITH incurred physical injury from the pepper ball round, from being rammed face first onto the grass, from having SAENZ and GONZALEZ jump on his back, and lingering effects from the chemical irritants. **z.** SMITH

incurred emotional harm and terror from being arrested, assaulted, and charged by SAENZ, GONZALEZ, and LOCKER.

## VI. FEDERAL PLEADING STANDARD FOR 42 U.S.C. 1983 AND MUNICIPALITIES: *Johnson v. City of Shelby, Miss.* ONLY REQUIRES A SHORT, PLAIN STATEMENT

The Supreme Court has confirmed there is no 'heightened pleading' requirements for claims against municipalities. Two of their opinions rebuked the 5th Circuit. In *Leatherman v. Tarrant Cty. Narc. Unit,* 507 U.S. 163 (1993), they rejected the 5th Circuit's heightened pleading standard for municipalities. "A federal court can't apply a more stringent standard than the FRCP 8(a)--- in civil rights suits against cities," *id. Monell* suits can hold cities liable based upon present law, rather than at the time of the incident, *Owen v. City of Ind.,* 445 U.S. at 657-58 (1980), *Marsh v. Arn,* 937 F.2d 1071 (6th Cir. 1991), *Barber v. City of Salem,* 953 F.2d at 237-38 (6th Cir. 1992).

In *Johnson v. City of Shelby, Mississippi,* 574 U.S. 10 (2014), the Supreme Court went further, stating "Plaintiffs did not even have to set out legal theories for relief," 574 U.S. at 11. *Johnson* stands for the proposition a suit will not be dismissed for imperfectly stating the legal theories supporting the claims, 574 U.S. at 10. In *Johnson,* the Plaintiffs **forgot to invoke** the 42 U.S.C. 1983 statute in the complaint. The suit was dismissed on that basis by the District Court, and affirmed by the 5th Circuit. Once again, the 5th Circuit was rebuked by the Supreme Court for superimposing its own pleading standard.

## MUNICIPALITIES HAVE NO IMMUNITY FROM SUIT: NO GOOD FAITH DEFENSE VII.

Political subdivisions have no 11th Amendment Immunity, *Lake County Estate, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391 (1979). Under *Monell v. New York Dept. of Soc. Svcs.,* 436 U.S. 658 (1978), the Supreme Court held counties and cities may be liable under 42 U.S.C. 1983 for Constitutional violations stemming from their official policies, customs, or practices. In *Owen v. City of Independence,* 445 U.S. 622 (1980), the Supreme Court held cities and counties do not have immunity from Monell suits, and may not assert a "good faith" defense.

VIII.                                    <u>MONELL LIABILITY</u>

Plaintiff Smith has pled: (1) official policies, customs, or practices of Guadalupe County, Texas; (2) promulgated by the final policymaker; (3) which were the 'moving force' behind the violation of a Constitutional right, *Davidson v. City of Stafford,* 848 F.3d 384 (5th Cir. 2017), quoting *Monell.*

A Plaintiff may plead: (1) official policies, rules, or regulations, *Alvarez v. City of Brownsville,* 904 F.2d 382 (5th Cir. 2018)(en banc); (2) widespread practices which are well-settled and constitute a municipal custom, *id.* at 390; and (3) a single decision by a final policymaking authority, *Davidson,* 848 F.3d at 395. (4) A Plaintiff may also show 'deliberate indifference' through defects in Training, Supervision, Discipline, and Hiring, *City of Canton v. Harris,* 489 U.S. 378 (1989).

<u>GUADALUPE COUNTY IS WRONG: *MONELL* LIABILITY CAN OCCUR WITHOUT INDIVIDUAL OFFICER LIABILITY, EVEN WITH QUALIFIED IMMUNITY</u>
IX.

The Defendants think a County is off the hook if the individual Deputies obtain Qualified Immunity. The 5th Circuit and several others hold differently, *Groden v. City of Dallas,* 826 F.3d 280 (5th Cir. 2016). Cities and Counties are liable whenever their policies cause **any** Constitutional harm. The municipality is still liable because their policies caused a Constitutional violation, *Watson v. City of Kansas City,* 857 F.2d 690 (10th Cir. 1988).  In *Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293 (7th Cir. 2010), the County was liable even without individual liability. It is **irrelevant** whether the law was settled at the time for cities and counties.

"A finding of municipal liability does not necessarily mean or depend on the liability of a police officer," *Simmons v. City of Philadelphia,* 947 F.2d 1042 (3rd Cir. 1991).  "The County could logically be liable even in the absence of any individual liability, *Arnold v. County of Nassau,* 89 F. Supp. 2d 285 (E.D.N.Y. 2000). See *Hammer v. Gross,* 932 F.2d 832 (9th Cir. 1991), where a pre-*Graham* case showed a Constitutional violation per a city policy. The case law was unclear. The officers committed a Constitutional violation following them; liability for the city. In *Speer v. City of Wayne,* 276 F.3d 980 (8th Cir. 2002), a fired officer sued the Mayor

and City. No liability for the Mayor. But, liability was imputed to the City. See *Garcia v. Salt Lake County,* 768 F.3d 303 (10th Cir. 1985), where a bevy of actors led to Municipal liability. Also see *Lincoln v. Bd. of Regents of Univ. Sys.,* 697 F.2d 928 (11th Cir. 1983).

## DEFENDANTS DO NOT ACCEPT PLAINTIFF'S PLED FACTS AS TRUE

**X.**

Under the 12(b)(6) standard, the Court and opponents **must accept** all well-pled facts as true, *Gines v. D.R. Horton, Inc.,* 699 F.3d 812 (5th Cir. 2012). Well-pled facts are taken as true and in the most favorable light to the Plaintiff, *Arnold v. Williams,* 979 F.3d 262 (5th Cir. 2020). Defendants do not. For example, Mr. Magee said, "Smith was playing IN the road." That gave the Deputies a legal basis to harass him. Smith pled he exercised OFF the road and in the grass, (Doc. 7: p. 4; ¶2). Magee said, "Smith's conduct of moving away was illegal." In the video, Locker himself said Smith's conduct "was not illegal," (Doc. 7: Att. D; min. 10:05). Also, Locker said, "Smith didn't have to talk to Saenz on his initial and purported "welfare check," (Doc. 7: Att. D; min. 7:31). The initial **catalyst** for the "contact," was Ronald Smith giving the **middle finger** to Saenz for nearly running off the road and killing him, (Doc. 7: p. 4; ¶3). That **is not a justifiable law enforcement** basis for a *Terry* stop or arrest, *Nichols v. Chacon,* 110 F. Supp.2d 1099 (W.D. Ark. 2000).

## XI.  PLAINTIFF REFERENCES AND INCORPORATES SAENZ' BODYCAM VIDEO AND TRAINING RECORD, AND LOCKER'S BODYCAM VIDEO

Under the Fed. Rule Civ. Pro 12(b)(6), Courts may consider the complaint, documents attached to it and referenced, and Judicial Notice of matters not subject to dispute, *Tellabs Inc. v. Maker Issues & Rts. Ltd.,* 551 U.S. 308 (2007). The contents of the pleadings, including attachments thereto may be considered on 12(b)(6) Motions, *Brand Coupon Network v. Catalina Mktg. Corp.,* 748 F.3d 631 (5th Cir. 2014).

Plaintiff affixed Def. Hunter Saenz' body camera footage from June 27, 2021 (Doc. 7: Att. D) and Def. Robert Locker's body camera footage from June 27, 2021 (Doc. 7: Att. D). Plaintiff also included Hunter Saenz' entire TCOLE Peace Officer Training Record (Doc. 7: Att. C).

In fact, Locker's and Saenz' body camera footage **actually supports Plaintiff Ronald Smith,** *Wheeler v Jersey City Police Dept.*, No. 16-1869 (3rd Cir. 2017). Present Counsel Andres Cano was also the Criminal Defense in Case No. CCL-21-0657 "Evading Arrest." Counsel "helped" to get that dismissed and received these videos during Criminal Discovery in Smith's case.

## XII.     SAENZ AND GONZALEZ USED ILLEGAL DEADLY FORCE BY POINTING FIREARMS AT A PASSIVE AND UNARMED SMITH

In Smith's Amended Complaint, (Doc. 7: p. 5; ¶5-6), Deputies Saenz and Gonzalez **are pointing firearms at Smith's head and torso.** That is their initial and instinctive response; to draw and point their service weapons in a lethal manner, (Doc: 7: Att. D video; Min.: 2:09-2:30). Pointing a firearm at passive suspects is the use of deadly force, *Robinson v. Solano County,* 278 F.3d 1007 (9th Cir. 2002). Deadly force is defined in *Tennessee v. Garner,* 471 U.S. 1 (1985). Such force may not be used against suspects unless they are armed, or pose a serious risk to the health or safety of others. In *Garner,* it was "open season" on fleeing felons in Tennessee. This was true regardless of whether they were armed or not. The Supreme Court took exception to this "Wild West" statute. Seizures under the 4th Amendment must be reasonable, *Graham v. Connor,* 490 U.S. 386 (1989). It isn't reasonable to point weapons at citizens who pose no physical threat, *Jacobs v. City of Chicago, Baird v. Renbarger,* 576 F.3d 340 (7th Cir. 2009).

It's not proper to use deadly force against innocuous suspects who are not armed, dangerous, or resisting, *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010). Plaintiff pled: he was sitting on the ground with his legs crossed and his hands thrust up in the air (Doc. 7: p. 5; ¶6). This innocuous and submissive position can be seen in the affixed video (Doc. 7: Att. D video; min. 2:09-2:52).

## SAENZ USED EXCESSIVE FORCE BY SHOOTING SMITH WITH A PEPPER GUN
XIII.

Plaintiff pled: he was sitting on the ground with his legs crossed and his hands thrust up in the air (Doc. 7: p. 5; ¶6). This innocuous and submissive position can be seen in the affixed video (Doc. 7: Att. D video; min. 2:09-2:52). Saenz points and shoots a pepper ball round at Smith's head—striking him near the right temple, (Doc. 7: p. 5; ¶7). This is also seen in the video (Doc. 7: Att. D video; min. 2:52). The projectile impacted with some force and caused

respiratory distress (Doc. 7: p. 5; ¶7). "I can't breathe" is uttered by Smith in the video (Doc. 7: Att. D video; min. 3:22). Smith convulsed due to the pepper irritants at the hospital, and temporarily lost all body control (Doc. 7: p. 8; ¶14, ¶16)

Mr. Magee for the Defendants states, "we concede Smith was harmed by the pepper round." Such a concession in a brief is a **__judicial admission.__** Statements in briefs are binding judicial admissions of fact, *City Nat'l Bank v. United States,* 907 F.2d 536 (5th Cir. 1990), *Young & Vann Supp. Co. v. Gulf Florida & Alabama Ry. Co.,* 5 F.2d 421 (5th Cir. 1925).

Citizens shot by pepper irritants can develop **Reactive Airway Dysfunction Syndrome** from exposure. Pepper spray can constitute excessive force even against dangerous convicted prisoners, *Walker v. Bowersox,* 526 F.3d 1186 (8th Cir. 2008). Firing pepper balls at individuals who, at most, are suspected of minor crimes is excessive force, *Nelson v. City of Davis,* 685 F.3d 867 (9th Cir. 2012). In *Davis,* a student incurred a permanent eye injury from a pepper round. These rounds are often illegally deployed at peaceful protestors, *Fogarty v. Gallegos,* 523 F.3d 1147 (10th Cir. 2008). In 2004, a young woman named **Victoria Snelgrove __died__** from a pepper ball round which struck her temple and entered her brain. The City of Boston was sued and paid $5,100,000 to her family. The family also sued the manufacturer of the weapon and won $10,000,000, *Snelgrave v. FMH USA, LLC,* No. 05-cv-12004 (D. Mass. 2006).

## XIV.        __SAENZ AND GONZALEZ USED EXCESSIVE PHYSICAL FORCE__

Plaintiff pled: he was sitting on the ground with his legs crossed and his hands thrust up in the air (Doc. 7: p. 5; ¶6). This innocuous and submissive position can be seen in the affixed video (Doc. 7: Att. D video; min. 2:09-2:52). Saenz points and shoots a pepper ball round at Smith's head—striking him near the right temple, (Doc. 7: p. 5; ¶7). This is also seen in the video (Doc. 7: Att. D video; min. 2:52).

Saenz and Gonzalez then proceed to leap upon and smother Smith with their (portly) bodies, ramming him face-first into the grass (Doc. 7: p. 5; ¶7). This caused Smith pain and injury (Doc. 7: p. 8; ¶16). Under *Graham v. Connor,* 490 U.S. 386 (1989), claims of excessive force are viewed under the 4th Amendment. Unreasonable and excessive force is a violation of the 4th Amendment, *id.* There was no need for any force, as Ronald Smith was not suspected of a violent offense, *Deville v. Marcantel,* 567 F.3d 156 (5th Cir. 2009). Further, Ronald Smith was

already restrained, *Curran v. Aleshire,* 800 F.3d 656 (5th Cir. 2015), *Ramirez v. Martinez,* 716 F.3d 369 (5th Cir. 2013), *Bush v. Strain,* 513 F.3d 492 (5th Cir. 2008). The 5th Circuit **does not require** a significant amount of injury, *Williams v. Bramer,* 180 F. 3d 699 (5th Cir. 1999) for 4th Amendment Excessive Force. The same is true under the more stringent 8th Amendment, *Hudson v. McMillian,* 503 U.S. 1 (1992), *Wilson v. Gaddy,* 559 U.S. 34 (2010).

When no physical force is justified by law enforcement, any injury is unconstitutional, *Williams v. Bramer,* 180 F.3d 699 (5th Cir. 1999). Smith was harmed (Doc. 7: p.8; ¶16). Saenz and Gonzalez are seen with their **knees on Smith's back and neck**—after the George Floyd tragedy, (Doc 7: Att. D video; min. 3:29).

### XV.   SAENZ AND LOCKER CAUSED A MALICIOUS PROSECUTION OF SMITH

In the video, Locker himself said Smith's conduct "was not illegal," (Doc. 7: Att. D video; min. 10:05). Also, Locker said, "Smith didn't have to talk to Saenz on his initial and purported "caretaking contact," (Doc. 7: Att. D; min. 7:31).  The initial **catalyst** for the "contact," was Smith giving the **middle finger** to Saenz for nearly running off the road and killing him, (Doc. 7: p. 4; ¶3). That **is not a justifiable law enforcement** basis for a *Terry* stop or arrest, *Nichols v. Chacon,* 110 F. Supp.2d 1099 (W.D. Ark. 2000).

Saenz said he "just saw Smith walking, and wanted to 'check on him," (Doc. 7: Att. D video; min. .38, min. 1:19). Locker said "Saenz was just going to check on Smith, and Smith could have told Saenz: I don't need your help." (Doc. 7: Att. D video: min. 4:30, min. 7:42).

These statements indicate these Defendants **knew** they didn't have any legal basis to contact Smith; much less arrest him. These Deputies went door to door to try and enlist complainants against Smith. They were shot down by the property owners. (Doc. 7: Att. D video; min. 23:38). Now Saenz came up with, "he wanted to contact Smith because he was fidgeting with a device (his cell phone)." (Doc. 7: Att. D video: min. 8:34). Locker said, "walking from Bulverde to New Braunfels **is not illegal…but weird." "Weird** can be part of our decision-making process." (Doc. 7: Att. D video: min. 10:05-10:10).

Malicious prosecution is an initiated criminal charge without probable cause, that terminates

in the Plaintiff's favor, *Thompson v. Connick,* No. 20-659 (S. Ct. 2022). These causes have an ill will and bad faith intent. "The Defendant initiates a criminal cause with improper purpose and without probable cause," *McDonough v. Smith,* 139 S.Ct. 2149 (2019). Malicious Prosecution is the wrongful initiation of legal process, *Winfrey v. Rogers,* 901 F.3d 483 (5th Cir. 2018). The initiation of wrongful legal process is a 4th Amendment violation akin to Malicious Prosecution, *Manuel v. City of Joliet,* 137 S.Ct. 911 (2017). These claims accrue when the criminal charges end in the Plaintiff's favor, *Whittington v. Maxwell,* 455 F. App'x 450 (5th Cir. 2011). Smith's *Evading Arrest* charge in CCL-21-0657 terminated in his favor by dismissal on August 1, 2022 (Doc. 7: p. 8; ¶15).

## XVI. <u>SAENZ AND LOCKER FALSELY ARRESTED SMITH: NO PROBABLE CAUSE</u>

Saenz said he "just saw Smith walking, and wanted to 'check on him," (Doc. 7: Att. D video; min. .38, min. 1:19). Locker said "Saenz was just going to check on Smith, and Smith could have told Saenz: I don't need your help." (Doc. 7: Att. D video: min. 4:30, min. 7:42). Now Saenz came up with, "he wanted to contact Smith because he was fidgeting with a device (his cell phone)." (Doc. 7: Att. D video: min. 8:34). Locker said, "walking from Bulverde to New Braunfels **is not illegal…but weird." "Weird** can be part of our decision-making process." (Doc. 7: Att. D video: min. 10:05-10:10). Under *Florida v. Royer,* 460 U.S. at 498 (1983) and *U.S. v. Mendenhall,* 446 U.S. 544 (1980), citizens don't have to answer questions or talk to police in the absence of a reasonable suspicion or probable cause. Locker acknowledged this.

There was no lawful basis to contact Smith under *Terry v. Ohio,* 392 U.S. 1 (1968) or at all. There was no probable cause to arrest Smith, *Alexander v. City of Round Rock,* 854 F.3d 298 (5th Cir. 2017). Police roughed up and arrested Alexander while he was checking on a cat. See *Evett v. DETNFF,* 330 F.3d 681 (5th Cir. 2003) for a retaliatory arrest by Police, (Doc.7: p. 4; ¶3 "flipping Saenz off"). In *McGregory v. City of Jackson, Miss.,* 504 F.Supp.2d 143 (S.D. Miss. 2007), Police wrongfully detained, injured, pulled guns on, and roughed up an elderly citizen who committed no criminality. In *Duffie v. City of Lincoln,* No. 15-2431 (8th Cir. 2016), Police

injured an amputee, pulled guns on him, searched his van, tore his rotator cuff and threw him on the ground face fist. The Police 'mistakenly' thought he was a much younger suspect. It is well established that citizens have a Constitutional right to be free from arrests lacking probable cause, *Mangieri v. Clifton,* 29 F.3d 1012 (5th Cir. 1994). Locker ordered the arrest, (Doc. 7: Att. D video; min. 18:49). At the hospital, Saenz said, "I am the Complainant," (Doc. 7: p. 7; ¶11).

## XVII.  SAENZ PERFORMED AN UNLAWFUL SEARCH OF SMITH'S PERSON

A lawful search incident to arrest requires a **lawful arrest,** *U.S. v. Robinson,* 414 U.S. 218 (1973). As above, Saenz and Locker wanted Smith detained for walking (Doc. 7: Att. D video: min. 10:05-10:10). Warrantless searches without probable cause violate the 4th Amendment, *Ortega v. Christian,* 85 F.3d 1521 (11th Cir. 1996). An illegal and warrantless arrest without Probable Cause necessarily produces illegal searches, *Beck v. Ohio,* 379 U.S. 89 (1964). Saenz searched Smith's person and personal possessions after arrest, (Doc. 7: pp. 13-14; ¶26, ¶28, ¶30). See video of Saenz rummaging through Smith's back pockets and personal property (Doc. 7: Att. D video; min. 4:00).

## XVIII.                LOCKER IS LIABLE AS A SUPERVISOR

Locker was called to the scene as a supervisor of Saenz and Gonzalez. Locker tells Smith, "I am the Supervisor," (Doc. 7: Att. D video; min. 14:44). *Ashcroft v. Iqbal*, 556 U.S. 692 (2009) **requires Supervisors to have direct involvement** in Constitutional harms. Not a problem here.

Saenz said he "just saw Smith walking, and wanted to 'check on him," (Doc. 7: Att. D video; min. .38, min. 1:19). Locker said "Saenz was just going to check on Smith, and Smith could have told Saenz: I don't need your help." (Doc. 7: Att. D video: min. 4:30, min. 7:42). Now Saenz came up with, "he wanted to contact Smith because he was fidgeting with a device (his cell phone)." (Doc. 7: Att. D video: min. 8:34). Locker said, "walking from Bulverde to New Braunfels **is not illegal…but weird." "Weird** can be part of our decision-making process." (Doc. 7: Att. D video: min. 10:05-10:10).

Locker directed Saenz to arrest Smith, **knowing** he didn't violate the law. Saenz asks Locker

for which criminal charge to assert, several times (Doc. 7: Att. D video; min. 22:11, min. 24:17). Locker tells Saenz to arrest Smith for "evading arrest," (Doc. 7: Att: D video; min. 27:27). Supervisors are liable under 42 U.S.C. 1983 for illegal acts they participated in, *Hansen v. Black,* 885 F.2d 642 (9th Cir. 1989). A Supervisor is responsible for the acts of their subordinates if they participated or directed them, *Preschooler II v. Clark Cty. Sch. Bd. of Trustees,* 479 F.3d 1175 (9th Cir. 2007). Locker was the direct supervisor of Saenz and Gonzalez, *Felarca v. Birgeneau,* 891 F.3d 809 (9th Cir. 2018).

### MONELL POLICIES OF GUADALUPE COUNTY, TEXAS

### XIX.        SMITH PLED A VALID "ADA" DISCRIMINATION CLAIM

Under Title II of the Americans with Disabilities Act, an aggrieved person must show: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, or denied the benefits of, services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against; and (3) that such discrimination is because of his disability, *Hale v. King,* 642 F.3d 492 (5th Cir. 2011). Physical and mental impairment includes "Dyslexia" and other specific learning disabilities, 28 C.F.R. §36.105(b)(2). Major life activities include, "reading, concentrating, thinking, communicating, and working," 42 U.S.C. §12102(2)(A). An impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population, 28 C.F.R. §36.105(d)(1)(v). See *J.D. by Doherty v. Colonial Williamsburg Found,* 925 F.3d 663 (4th Cir. 2019).

Dyslexia is a valid disability under the ADA, *Ramsey v. National Board of Medical Examiners,* No. 20-1058 (3rd Cir. 2020). Smith was persecuted because of his Dyslexic disability, (Doc. 7: p. 7; ¶12-13).

No exception applies here, as there were no 'exigent circumstances.' Deputy Saenz issued a measured and discriminatory response in innocuous circumstances, unlike the Officer in *Hainze v. Richards,* 207 F.3d 795 (5th Cir. 200). There, Police had to use deadly force to protect themselves from the Plaintiff. Thus, they had no time to inquire about his disabilities. Curiously, no other Circuit recognizes our exception, *Bircoll v. Miami-Dade Cty.,* 480 F.3d 1072 (11th Cir.

2007), *Gray v. Cummings,* 917 F.3d 1 (1st Cir. 2019). Reasonable accommodations must be made for those with difficulties communicating, *Luke v. Lee County,* No. 21-50791 (5th Cir. 2022).

Smith made it known to the Deputies he had diagnosed Dyslexia, (Doc. 7: p. 7; ¶12). The Deputies treated him the worse for disclosing it, rather than making reasonable accommodations, (Doc. 7: p. 7; ¶13). You can see in the video, Smith has difficulties understanding and communicating with the Deputies. Saenz says, "he doesn't understand his **Miranda** rights, (Doc. 7: Att. D video, min. 6:40, min. 9:00). Locker says, he has to choose between the County Jail and a mental facility, (Doc. 7: Att. D video; min. 10:17). Saenz and Locker both sense Smith has some communication obstacle, (Doc. 7: Att. D video; min. 17:00-17:38).

## XX.  SMITH PLED A VALID §504 OF THE 1973 REHABILITATION ACT CLAIM

To state a claim under § 504 of the Act, a Plaintiff must show: (1) he was an individual with a disability; (2) otherwise qualified for the program; and (3) excluded from, denied the benefits of, or otherwise subjected to discrimination under the program, solely by reason of their disability, *Ball v. LeBlanc,* 792 F.3d 584 (5th Cir. 2015). Physical and mental impairment includes "Dyslexia" and other specific learning disabilities, 28 C.F.R. §36.105(b)(2). Major life activities include, "reading, concentrating, thinking, communicating, and working," 42 U.S.C. §12102(2)(A). An impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population, 28 C.F.R. §36.105(d)(1)(v). See *J.D. by Doherty v. Colonial Williamsburg Found,* 925 F.3d 663 (4th Cir. 2019). Title II of the ADA and Section 504 do not differ in any material sense and may be considered together, *Martin v. California Dept. of Veterans Affairs,* 560 F.3d 1042 (9th Cir. 2009). Section 504 allows for a full array of remedies, including equitable relief and Compensatory damages, *Mark H. v. Lemahieu,* 513 F.3d 922 (9th Cir. 2008). Dyslexia is a recognized learning disability, *Florence County Sch. Dist. v. Carter,* 510 U.S. 7 (1993), and under Section 504, *Rogich v. Clark County School Dist.*, 2:17-cv-01541-RFB-NJK (Dist. Nev.). Once again, Smith was persecuted for Dyslexia (Doc. 7: p. 7; ¶12-13).

See *Wilson v. City of Southlake,* No. 18-10342 (5th Cir. 2019), where an overzealous Police Officer traumatized a child with emotional disabilities, violating both Title II and Section 504.

13

Smith made it known to the Deputies he had diagnosed Dyslexia, (Doc. 7: p. 7; ¶12). The Deputies treated him the worse for disclosing it, rather than making reasonable accommodations, (Doc. 7: p. 7; ¶13). You can see in the video, Smith has difficulties understanding and communicating with the Deputies. Saenz says, "he doesn't understand his **Miranda** rights," (Doc. 7: Att. D video, min. 6:40, min. 9:00). Locker says, he has to choose between the County Jail and a mental facility, (Doc. 7: Att. D video; min. 10:17). Saenz and Locker both sense Smith has some communication obstacle, (Doc. 7: Att. D video; min. 17:00-17:38).

## XXI.                    <u>POLICY OF EXCESSIVE FORCE</u>

Saenz and Gonzalez were allowed to: pull guns on Smith, shoot him in the head with a pepper ball, jump on his back, and place their knees on his neck and head. All in the space of a minute, (Doc. 7: Att. D video; min. 2:30-3:22). Locker reviewed their body camera footage and Use of Force Reports…approving them (Doc. 7: Att. D video; min. 29:00).  In *Rymer v. Davis,* 754 F.2d 198 (6th Cir. 1985), Police were given carte blanche to use excessive force and make unlawful arrests. In *Lilly v. City of New York,* 934 F.3d 222 (2nd Cir. 2019), the Plaintiff obtained a monetary judgment for city policies of excessive force. Guadalupe County approves of these unlawful exertions of force, (Doc. 7: p. 12; ¶24).

## XXII.        <u>DEFECTIVE *TERRY* STOP AND PROBABLE CAUSE POLICIES</u>

Guadalupe County Sheriff's Deputies contact, stop, detain, and often arrest citizens without a lawful basis. In fact, they are encouraged to do so under the STEP Traffic initiative and other defective policies (Doc. 7: p. 12; ¶25). New York City had such a policy, practice, or custom. See *Floyd v. City of New York,* 959 F. Supp.2d 540 (S.D.N.Y. 2013), where the nation's largest city directed its officers to contact and stop citizens without valid legal justifications. The theme was a systematic violation of the *Terry v. Ohio,* 392 U.S. 1 (1968) principle. The overwhelming majority of these police contacts produced no weapons, illegal contraband, or evidence of criminality. Under *Terry,* police may contact and stop a subject if they have a 'reasonable suspicion' criminal activity is afoot. This includes patting down for weapons, checking car

registrations, and checking for warrants. The proof of their defective training is their recognition Smith was not breaking the law—and their compulsion to detain him.

Saenz said he "just saw Smith walking, and wanted to 'check on him," (Doc. 7: Att. D video; min. .38, min. 1:19). Locker said "Saenz was just going to check on Smith, and Smith could have told Saenz: I don't need your help." (Doc. 7: Att. D video: min. 4:30, min. 7:42). Now Saenz came up with, "he wanted to contact Smith because he was fidgeting with a device (his cell phone)." (Doc. 7: Att. D video: min. 8:34). Locker said, "walking from Bulverde to New Braunfels **is not illegal…but weird." "Weird** can be part of our decision-making process." (Doc. 7: Att. D video: min. 10:05-10:10). See *Pappas v. New Haven Police Dept.,* No. 3:98-cv-981-HBF (D. Conn. 2001), where the City showed a failure to train on probable cause and lawful arrest procedures. See *Ortga v. Arpaio,* No. 13-16285 (9th Cir. 2015) for a policy of conducting illegal *Terry* stops.

## XXIII.        GUADALUPE COUNTY'S FAILURE TO DISCIPLINE

Guadalupe County Deputies are allowed to violate the rights of citizens, suspects, and the public. This occurs through excessive force, unlawful seizures, unlawful searches, and the filing of bogus criminal charges. They act in this manner because they have no fear of punishment by their superiors, (Doc. 7:  p. 13; ¶27). See *Harris v. County of Shasta,* 132 F.3d 512 (9th Cir. 1997), where Deputies abused citizens over minor infractions, and retaliated against those citizens who tried to invoke their statutory and Constitutional rights. See *Hunter v. County of Sacramento*, No. 09-15288 (9th Cir. 2011), where the County had a *Monell* policy of Excessive Force. Deputies abused inmates without fear of investigation or discipline.

See *Beck v. City of Pittsburgh,* 89 F.3d 966 (3rd Cir. 1996). Beck was leaving a parking lot in his parent's car, when an officer blocked him with his vehicle. Officer Williams beat and roughed up Beck, and charged him with a bogus DWI offense. Williams had a lengthy IA dossier. Many complaints of excessive force were lodged, but none sustained. The City of Pittsburgh sustained 1 out of every 30 citizens' complaints of excessive force from 1991-94. The Third Circuit found evidence to support his Monell claim of a Failure to Discipline. Guadalupe County Deputies are allowed to act like Williams did, violating a host of suspects' rights.

In *Vann v. City of N.Y.,* 72 F.3d 1040 (2nd Cir. 1995), New York City failed to supervise and discipline violent officers, including Officer Williamson. He was allowed to pistol-whip citizens, assault them, and falsely arrest them. The 2nd Circuit found enough evidence to show municipal liability under Monell. Saenz and Gonzalez were allowed to: pull guns on Smith, shoot him in the head with a pepper ball, jump on his back, and place their knees on his neck and head. All in the space of a minute, (Doc. 7: Att. D video; min. 2:30-3:22). Locker reviewed their body camera footage and Use of Force Reports…approving them (Doc. 7: Att. D video; min. 29:00).

## XXIV.        GUADALUPE COUNTY'S FAILURE TO SUPERVISE

Guadalupe County creates an environment which authorizes 4th Amendment violations. Deputies are allowed to displace the 4th Amendment through illegal contacts, detentions, arrests, and searches, (Doc. 7: p. 13; ¶26-27). Deputies are encouraged to generate arrests, whether or not they have a criminal predicate. The rank and file become a law unto themselves, (Doc. 7: pp. 11-12; ¶27). See *Lockett v. County of Los Angeles,* No. 19-55898 (9th Cir. 2020), where Deputies were allowed to use excessive force on suspects, persecute the public, contrive false charges, and function unsupervised by the County.

In *Hefling v. City of Miami,* 811 F.3d 1271 (11th Cir. 2016), Police were allowed to persecute citizens, and seize property without due process of law on their own accord, and under *Monell*. In *Melendres v. Arpaio,* 784 F.3d 1254 (9th Cir. 2015), rogue Deputies were allowed to initiate pretextual stops, racially profile, and conduct unlawful detentions. Municipal liability can flow from policies and directives from policymaking officials who order 4th Amendment violations, *Ryan v. Immaculate Queen Center,* 188 F.3d 857 (7th Cir. 1999).  Inadequate 4th Amendment training and oversight can lead to *Monell* liability, *Pappas v. New Haven Police Dept.,* 175 F.2d 288 (D. Conn. 2001). A failure to supervise is endemic of a multitude of harmful effects on the public, *Arnold v. City of San Antonio,* SA-07-CA-877 (W.D. Tex. 2009). These harmful effects may include unlawful seizures, false arrests, and excessive force condoned by Policymakers, *Amnesty America v. Town of West Hartford,* 361 F.3d 113 (2nd Cir. 2004).

Saenz and Gonzalez were allowed to: pull guns on Smith, shoot him in the head with a

pepper ball, jump on his back, and place their knees on his neck and head. All in the space of a minute, (Doc. 7: Att. D video; min. 2:30-3:22). Locker reviewed their body camera footage and Use of Force Reports…approving them (Doc. 7: Att. D video; min. 29:00).

## XXV.                    FAILURE TO SCREEN IN HIRING

As a Peace Officer, Saenz is a motley specimen. In his TCOLE Peace Officer Record, it reflects inadequate training, pedigree, education, and employment, (Doc. 7: Att. C). One can see Saenz bounces around to small agencies with a limited tenure, *id.* p.35. You can see that Guadalupe County itself provided little or no training to Saenz during his 1 year tenure—and not before the June 27, 2021 incident with Plaintiff Smith, *id.* p. 36. In fact, Saenz is not currently employed as a Peace Officer, *id.* p.35. Guadalupe County fails to hire qualified and morally fit Deputies, (Doc. 7: p. 12; ¶23).

Failure to screen in hiring can lead to disastrous results; usually excessive force and unlawful detentions, searches, and arrests. See *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000). A single hiring lapse led to the deployment of a Deputy with no training and a criminal record. The results: brutal and needless excessive force. Plaintiffs have won upwards of $97,000,000 at the extreme end of failures to screen cases, *Reeves v. Town of Cottageville,* 2:12-cv-02765 (D.S.C. 10/15/2014). Saenz wanted revenge on Smith because he "gave him the bird," not a legitimate law enforcement aim, (Doc. 7: p. 4; ¶3). The results: Saenz and Gonzalez were allowed to: pull guns on Smith, shoot him in the head with a pepper ball, jump on his back, and place their knees on his neck and head. All in the space of a minute, (Doc. 7: Att. D video; min. 2:30-3:22).  See *White v. Taylor,* 677 F. Supp. 882 (S.D. Miss. 1988), the city hired officers who were not certified. Thus, the officers had no lawful authority to do anything.

## XXVI.          FAILURE TO TRAIN ON THE USES OF DEADLY FORCE

At the time of the incident on June 27, 2021, Saenz had no proper training on the uses of deadly force (Doc. 7: Att. C). In fact, Saenz did not receive training from Guadalupe County on firearms and such…**until after June 27, 2021,** *id.* p.36. One can see the Deputies handiwork: Saenz and Gonzalez were allowed to: pull guns on Smith, shoot him in the head with a pepper

ball, jump on his back, and place their knees on his neck and head. All in the space of a minute, (Doc. 7: Att. D video; min. 2:30-3:22). The Supreme Court has stated that training in the uses of deadly force is "vital." See *Tennessee v. Garner,* 471 U.S. 1 (1985). They have also stated the same in *City of Canton v. Harris,* 489 U.S. 378 (1989). See footnote 10 of *Harris,* "the failure to train officers in the Constitutional limitations of deadly force **is deliberate indifference.** This defective training is egregious, (Doc. 7: pp. 9-10; ¶18). See *Price v. Sery,* 513 F.3d 962 (9th Cir. 2008), for a *Monell* policy of gratuitously using deadly force.

## XXVII.     FAILURE TO TRAIN ON THE USES OF SECONDARY FORCE

At the time of the incident on June 27, 2021, Saenz had no proper training on the uses of secondary force (intermediate) (Doc. 7: Att. C). In fact, Saenz did not receive such training **until after June 27, 2021.** Even then, he received it from the Georgetown Police Department, *id.* p.36. One can see the Deputies handiwork: Saenz and Gonzalez were allowed to: pull guns on Smith, shoot him in the head with a pepper ball, jump on his back, and place their knees on his neck and head. All in the space of a minute, (Doc. 7: Att. D video; min. 2:30-3:22).

In *Anderson v. Roberts,* 823 F.2d 325 (8th Cir. 1987), Deputies roughed up a citizen. These Deputies were supposedly 'trained' on the uses of force. However, these policies were not written or codified. See *Otero v. Wood,* 316 F. Supp.2d 612 (S.D. Ohio 2004), where the city failed to train on the lawful uses of wooden projectiles. This failure to train encompasses a diverse array of implements and wrongful uses of force, (Doc. 7: p. 10; ¶19, p. 11; ¶21).

## XXVIII.     FAILURE TO TRAIN ON THE USE OF PHYSICAL FORCE

At the time of the incident on June 27, 2021, Saenz had no proper training on the uses of physical force, pain compliance, or de-escalation (Doc. 7: Att. C). One can see Saenz' handiwork by jumping on Smith's head, neck, and back, with his knees, (Doc. 7: Att. D video; min. 2:30-3:22). See *Lockett v. County of Los Angeles,* No. 19-55898 (9th Cir. 2020), where Deputies used improper physical force and training to disfigure the Plaintiff. In *Fiacco v. City of Rensellaer,*

783 F.2d 319 (2nd Cir. 1986), a Plaintiff was beaten by the improper use of physical force under *Monell* policies. These Guadalupe defects lead to harm, (Doc. 7: p. 12; ¶24). See *Roe v. County of Lake,* 107 F. Supp.2d 1146 (N.D. Cal. 2000), where a County had a policy of physical abuse.

## XXIX.  FAILURE TO TRAIN ON REASONABLE SUSPICION/PROBABLE CAUSE

Guadalupe County fails to provide adequate training on 4th Amendment principles, (Doc. 7: p. 10; ¶20). Saenz said he "just saw Smith walking, and wanted to 'check on him," (Doc. 7: Att. D video; min. .38, min. 1:19). Locker said "Saenz was just going to check on Smith, and Smith could have told Saenz: I don't need your help." (Doc. 7: Att. D video: min. 4:30, min. 7:42). Now Saenz came up with, "he wanted to contact Smith because he was fidgeting with a device (his cell phone)." (Doc. 7: Att. D video: min. 8:34). Locker said, "walking from Bulverde to New Braunfels **is not illegal…but weird." "Weird** can be part of our decision-making process." (Doc. 7: Att. D video: min. 10:05-10:10).

See *Parker v, Dist. of Columbia,* 850 F.2d 708 (D.C. Cir. 1988), for *Monell* policies with defective instruction on arrest procedure. In *S.L. v. St. Louis Met. Bd. of Police Comm.,* N. 12-3193 (8th Cir. 2013), the City had a pattern of false arrests. In *Fisher v. City of San Jose,* 475 F.3d 1049 (9th Cir. 2007), San Jose had unlawful 4th Amendment policies and training which resulted in a paralyzed Plaintiff. The District Court **ordered** the City to provide proper 4th Amendment Training to its officers.

## XXX.              PLAINTIFF PLED DELIBERATE INDIFFERENCE

Failures to Supervise, Train, Discipline, or Hiring failures are treated similarly, *Rhyne v. Henderson City,* 973 F.2d 386 (5th Cir. 1992). A Failure to Train theory is a form of *Monell* claim, *City of Canton, v. Harris,* 489 U.S. 378 (1989). In *Canton,* the Supreme Court rejected Petitioner's argument any municipal policy had to be unconstitutional on its face. Rather the Court observed §1983 liability may be imposed when "the failure to train in a relevant respect amount to deliberate indifference to the constitutional rights of persons with whom the police come into contact." In Failure to Train cases, defects in a particular training program must be

specifically alleged," *Quinn v. Guerrero,* 863 F.3d 353 (5th Cir. 2017). The "failure to train" can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement," *Peterson v. City of Fort Worth,* 588 F.3d at 849 (5th Cir. 2009).

Failure to Train theories require: (1) the municipality failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; (3) the failure to train or supervise represented an overt deliberate indifference to the plaintiff's constitutional rights, *Pena v. Rio Grande City,* 879 F.3d at 623 (5th Cir. 2018), (Doc. 7: pp. 9-15; ¶17-32). **Smith pled** detailed flaws in Guadalupe County's Training, ¶17-32, and the Sheriff had involvement as the final policymaker, ¶17. See *Turner v. Upton County,* 915 F.2d 133 (5th Cir. 1990).

## XXXI.    PLAINTIFF PLED CONSTITUTIONAL VIOLATIONS AND HARM

Plaintiff pled Constitutional violations which were clearly established, *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), of which these Deputies willingly violated, *Malley v. Briggs,* 475 U.S. 336 (1986), (Doc. 7:  pp. 4-17; ¶ 1-33). Smith was harmed: being handcuffed, searched, detained, arrested, endured respiratory distress, terrorized, falsely charged, and incurred legal bills (Doc. 7: p. 15; ¶31). Compensatory and Punitive damages can be had; *Smith v. Wade,* 461 U.S. 30 (1983).

## XXXII.                    CONCLUSION

Plaintiff Smith has pled abundant factual details which show: he committed no criminal offenses and he was not aggressive to the Deputies. He was not armed, and he was calm. Smith was exercising and was not a danger to anyone. Smith further illustrated how these Deputies treated him disparately because of his Dyslexia. Smith pled how these violations occurred as the result of Saenz', Locker's, and Gonzalez' tortious conduct and adherence to Guadalupe County policies. The individual Constitutional claims and violations were clearly established by prior case decisions. The pled *Monell* claims illustrate defective policies, causation, and deliberate indifference. This is more than adequate to satisfy the Rule 12(b)(6) standard, where Courts must accept well-pled facts as true. Smith's claims are bolstered by the body camera videos.

Respectfully Submitted,

*/s/ Andres Cano*

Andres Cano
Plaintiff's Attorney
Texas Bar 24100071
1140 South Laredo
P.O. Box 830742
San Antonio, Texas 78204
(210) 320-2020
(210) 263-7667 (fax)
mrbarrister28@gmail.com

## CERTIFICATE OF SERVICE

I affirm a true and correct copy of this Plaintiff's Response in Opposition to the Guadalupe County Defendants' Rule 12(b)(6) Motion to Dismiss was electronically served on August 23, 2023 to the following persons:

*/s/ Andres Roberto Cano*
Texas Bar 24100071

E. Magee
J. Mcvey
Defendants' Attorney
Allison-Bass Law firm
404 West 12th Street
Austin, TX 78701
e.magee@allison-bass.com
j.mcvey@allison-bass.com