IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RONALD SMITH, §
§
*Plaintiff,* § SA-23-CV-00881-OLG
§
vs. §
§
ROBERT LOCKER,  GUADALUPE §
COUNTY, HUNTER SAENZ, JIMMY §
GONZALEZ, §
§
*Defendants.* §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendants Guadalupe County, Texas, Hunter Saenz, Robert Locker, and Jimmy Gonzalez's Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) [#8]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#10]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendants' motion be granted in part and denied in part as set forth herein.

## I.  Background

This civil rights action arises out of alleged injuries sustained by Plaintiff Ronald Smith during a police encounter and his arrest on June 27, 2021. Smith's live pleading is his First Amended Complaint [#7], filed after Defendants removed this case from state court. The Amended Complaint names four Defendants—Guadalupe County, Texas; Hunter Saenz and

Jimmy Gonzalez (Guadalupe County Sheriff's Deputies); and Robert Locker (Guadalupe County Sheriff's Supervisor)—and asserts causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act ("Rehabilitation Act"). By his suit, Smith seeks compensation for physical injuries and pain and suffering sustained as a result of his allegedly unlawful seizure and false arrest.

According to the factual allegations in Smith's Amended Complaint, he went jogging in the late afternoon in Bulverde, Texas, to train for a marathon and was targeted by Deputy Saenz without any lawful basis or reasonable suspicion of illegal activity. (Am. Compl. [#7], at 4–17.) Smith further alleges that Saenz and the other responding officer, Deputy Gonzalez, subjected him to excessive force when they brandished their firearms, shot him in the face with a pepper ball, and handcuffed him while pushing him face down in the grass. (*Id.*) Finally, Smith alleges that Saenz and his supervisor, Deputy Locker, unlawfully arrested Smith for the fabricated charge of "Evading Arrest" without any probable cause. (*Id.*)

Based on these allegations, Smith asserts various violations of the Fourth Amendment against Saenz, Gonzalez, and Locker based on their individual actions and against Locker in his capacity as supervisor. (*Id.* at 17–19.) Guadalupe County is also alleged to have violated the Fourth Amendment based on its alleged failure to train, screen, supervise, and discipline its deputies, and to have violated the ADA and the Rehabilitation Act by discriminating against Smith due to his alleged disability. (*Id.* at 19–22.)

Defendants filed an initial motion to dismiss pursuant to Rule 12(b)(6) as to Smith's state court Petition. The motion was dismissed as moot when Smith filed his amended pleading. Smith has therefore already had one opportunity to address the pleading deficiencies alleged by

Defendants.  Defendants have filed a second motion to dismiss for failure to state a claim. Defendants argue that the individual Defendants are entitled to qualified immunity; that Smith has failed to state a plausible claim against Guadalupe County under Section 1983, the ADA, or the Rehabilitation Act; and that Smith has failed to state a plausible Fourth Amendment violation against any of the individual Defendants.  The motion is ripe for the Court's review.

## II.  Legal Standard

Defendants' motion seeks dismissal of Smith's Amended Complaint for failure to state a claim under Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the complaint and those that are

central to the claims at issue and incorporated into the complaint by reference. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Smith attached two videos as exhibits to his Amended Complaint, as well as Saenz's Texas Commission on Law Enforcement ("TCOLE") Peace Officer Training Record. The videos are recordings from body cameras worn by Saenz and Locker during the police encounter and arrest. The undersigned has considered the videos and TCOLE records in issuing this report and recommendation, as the attachments are central to Smith's claims, were filed with his pleadings, depict the incident underlying this lawsuit, and are referenced in the motion to dismiss briefing. *See Hartman v. Walker*, 685 Fed. App'x 366, 368 (5th Cir. 2017) (considering video footage at motion-to-dismiss stage under similar circumstances). Smith specifically states in his response to the motion to dismiss that he is incorporating both the videos and the training record into his pleadings. (Resp. [#9], at 6.)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). Additionally, where a plaintiff's allegations are "blatantly contradict[ed]" and "utterly discredited" by the video evidence, this Court is not required to favor the allegations over the facts depicted by the evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment."); *see also Hartman*, 685 Fed. App'x at 368 (citing *Scott* for proposition that on a motion to dismiss a court need not credit pleadings over contradictory video evidence).

### III.  Facts Alleged in the First Amended Complaint

Smith alleges the following facts in his First Amended Complaint, which are not blatantly contradicted by the video evidence submitted with his pleadings.  In recounting the facts, the undersigned also includes additional facts established by the video evidence that are not referenced in the Amended Complaint.  The following facts are therefore taken as true for purposes of ruling on Defendants' motion to dismiss.

On the afternoon of June 27, 2021, Smith went for a jog from his house in Bulverde, Texas.  (Am. Compl. [#7], at 4.)  During Smith's exercise session, he encountered Saenz, who was driving a Guadalupe County Sheriff's Department cruiser along Highway 46.  (*Id.*)  Saenz's vehicle came up behind Smith on the shoulder of the highway and nearly hit Smith's shoulder. (*Id.*)  In response, Smith gave Saenz "the middle finger."  (*Id.*)  Saenz's vehicle thereafter continued to encircle Smith, passing him several times and driving close to him on the roadway. (*Id.*)  Smith then lost sight of Saenz, presumed he had left the area, and continued exercising, at one point stopping to rest on the gravel easement off the roadway and to play a game and search his location on his phone.  (*Id.*)

Saenz's body camera recording begins after this initial encounter and depicts Saenz's view as he ran through rural fields adjacent to the highway chasing Smith in the far distance. Saenz repeatedly yelled for Smith to stop and identified himself as law enforcement, while also calling for backup support.  Smith was unaware that Saenz was following him until Smith reached Guadalupe Valley Memorial Park, a cemetery.  (*Id.* at 5.)  When Saenz caught up to

Smith, Smith was seated cross-legged on the grass shoulder, in a passive position, outside of the cemetery grounds, next to the highway—with his cell phone in his hand.  Gonzalez's vehicle arrived at approximately the same time with its lights flashing.  Both officers ran towards Smith with their weapons drawn, and Saenz screamed repeatedly for Smith to put his hands up and to show the officers his hands.  Smith did not immediately raise his hands in the air but is clearly depicted with both of his hands visible holding his cell phone.  There was no weapon in Smith's hands, and Smith—wearing only shorts and a t-shirt—remained still and seated in a cross-legged position facing the roadway.  When Smith did not acknowledge the officers, Saenz directed Gonzalez not to use lethal force and indicated he was going to use "less than lethal" force on Smith, exchanging his firearm for his pepper ball gun.  (*Id.*)   As both officers closed in on him, Smith raised one hand in the air with a palm open and kept his other hand on his cell phone to speak to the 911 operator.  The officers then continued to yell at Smith, directing him at this point to lie down on his stomach on the ground.  Smith pleaded for them to hold on, as he yelled at the 911 operator that he had two men with guns on him.  When Smith did not drop his phone or lie down, Saenz shot him with a pepper bullet, which struck him in the left temple.  (*Id.*)

At this point, Smith became overwhelmed with panic.  He continued to scream to the 911 operator that he had been shot and that he had not done anything wrong, and the officers continued to yell at him to lie down.  When Smith did not respond to the officers' directions, they approached, roughly rolled him over, handcuffed him, and swept his body for weapons, finding none.  During the handcuffing, Smith screamed he could not breathe and that he needed an ambulance and was wheezing from the pepper spray's irritants.  The officers called an ambulance to provide Smith with medical attention.  When Smith inquired what he had done wrong, Saenz told him he had criminally trespassed on private property, and Smith responded

that was because Saenz was chasing him.  Saenz asked Smith his name, and Smith said he did

not know.  Saenz then read Smith his *Miranda* warnings.  (*Id.*)  Smith did not convey that he

understood the warnings and refused to respond to any of the officers' initial questions.

The officers spoke with neighboring property owners regarding the trespass allegations,

but no one wanted to press charges against Smith.  (*Id.* at 6.)  Smith requested a supervisor, and

Locker arrived on the scene.  (*Id.*)  Smith's wife, Natalie, also arrived soon thereafter, and she

provided Smith's name and informed Locker that Smith had called her to pick him up and that he

regularly ventures far from home.  (*Id.*)  Natalie told Locker that Smith does not have any mental

issues and was not using any narcotics.  But Locker continued to suggest Smith had mental

issues and that his behavior was "weird."  When Natalie asked Locker if Smith was going to be

released as he had not done anything illegal, Saenz told Natalie that Smith was going to be

detained.  (*Id.*)  By this point, Smith's breathing was no longer labored, and he was able to

communicate with the officers but still did not provide his name or other answers to their

questions.  In his pleadings, Smith alleges that he told the officers that he was diagnosed with

dyslexia at age six and that this condition hindered him from remembering information, but the

videos do not capture such a statement.  (*Id.* at 7.)  The video does document that Smith told

Locker he was exercising and runs marathons.  (*Id.*)

An ambulance arrived, and two EMTs approached Smith to attempt to place him in the

ambulance.  Smith refused to talk to the EMTs or to cooperate in receiving medical attention, so

the EMTs left the scene.  Smith demanded an attorney at this time and again refused to answer

any questions.  However, once the officers informed him that they were in Guadalupe, not

Comal, County, he introduced himself as Ronald Smith and became somewhat more cooperative.

Smith and his wife both continued to plead with the officers to allow him to go home, to shower

off the pepper irritant, and to be released, but the officers told Smith he was subject to emergency detention for medical evaluation due to possible mental issues.  The officers ultimately decided to charge him with "evading arrest" for running away from a law enforcement officer who had concerns about possible criminal trespassing.  The officers informed him they were first taking him to the hospital to get him medically cleared.

According to the pleadings, Saenz took Smith to the hospital.  (*Id.* at 8.)  After a period of waiting, Smith developed a severe adverse reaction to the chemical irritants and began convulsing and displayed seizure-like symptoms. (*Id.*)  Smith's breathing again became "labored and constricted," his "neurological functions became addled," and he "lost control of his bodily functions."  (*Id.*)  The irritants continue to cause Smith adverse respiratory effects.  (*Id.*)  The officers thereafter took Smith to the Guadalupe County Jail for booking, and he was formally charged with evading arrest.  (*Id.*)  The charges were dismissed on August 11, 2022.  (*Id.*)

## IV. Analysis

Defendants seek dismissal of all of Smith's claims on the following bases: (1) the individual Defendants are entitled to qualified immunity; (2) Smith has failed to state a claim under the ADA or Rehabilitation Act against Guadalupe County; (3) Smith has failed to sufficiently plead Guadalupe's municipal liability under Section 1983 for any alleged constitutional violations; and (4) Smith fails to plead a plausible Fourth Amendment violation against the individual Defendants.  The District Court should grant Defendants' motion to dismiss as to Guadalupe County because Smith fails to plead claims of disability discrimination under the ADA and Rehabilitation Act or the County's municipal liability under Section 1983.  The District Court should also grant Defendants' motion as to Smith's Fourth Amendment

claims against Locker for excessive force.  In all other respects, Defendants' motion to dismiss should be denied.

**A.      Smith fails to state a claim of disability discrimination against Guadalupe County.**

Smith asserts claims of disability discrimination against Guadalupe County under the ADA and the Rehabilitation Act, alleging that he is a qualified individual with a disability and that officers refused to make accommodations for him when he was unable to recite numerical data or information in response to their questions during his arrest.  These allegations fail to state a claim of disability discrimination under either statute, and these claims should be dismissed.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  "Public entities" include local governments.  *Id.* § 12131(1)(A). Section 504 of the Rehabilitation Act of 1973 provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

The elements necessary to plead a cause of action of disability discrimination under the Rehabilitation Act and the standards governing such claims are "operationally identical" to those required to state a claim under the ADA.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004).  "The only material difference between the two provisions lies in their respective causation requirements."  *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).  Under both statutes, to plead a prima facie case of disability discrimination,

Smith must plead (1) he is a qualified individual with a disability; (2) he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the entity; and (3) the discrimination was due to his disability. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020); *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017). Under the Rehabilitation Act, the plaintiff must establish that disability discrimination was the sole reason for the exclusion or denial of benefits. *Cadena*, 946 F.3d at 723 n.1.

The Fifth Circuit has recognized claims of disability discrimination under the ADA and Rehabilitation Act in the context of police officers failing to reasonably accommodate the known limitations of disabled persons they detain. *Wilson v. City of Southlake*, No. 21-10771, 2022 WL 17604575, at *5 (5th Cir. Dec. 13, 2022) (citing *Windham*, 875 F.3d at 235–36). However, in doing so, the Fifth Circuit has also explained that these statutes require the reasonable accommodation of limitations, not disabilities. *Id.* (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)). Thus, a "critical component" of a claim of a failure to accommodate is proof that "the disability and its consequential limitations were known" by the defendant. *Windham*, 875 F.3d at 236 (internal quotation and citation omitted). Accordingly, the plaintiff must "specifically identify the disability and resulting limitations," and "request an accommodation in direct and specific terms." *Id.* at 237 (internal quotation and citation omitted). Where an accommodation is not requested, the plaintiff must show that "the disability, resulting limitation, and necessary reasonable accommodation" were "open, obvious, and apparent" to the defendant. *Id.* (internal quotation and citation omitted).

Smith alleges in his Amended Complaint that he has a diagnosis of dyslexia and that he communicated this diagnosis to Defendants and the effect it has on his ability to remember

information.  The videos submitted by Smith documenting his encounters with the police officers do not corroborate these allegations.  However, assuming Smith or his wife at some point in the police encounter did communicate Smith's dyslexia diagnosis and related limitations, Smith still fails to plead the essential elements of a disability discrimination claim because there is no allegation as to what reasonable accommodation he was seeking due to his dyslexia.

In his response, Smith argues that it is clear from the video that he was having difficulties understanding and communicating with the deputies.  True, the video makes clear that the officers were confused by Smith's behavior and repeatedly asked Natalie if Locker had a mental health diagnosis.  Locker specifically asked Natalie if there was anything they should know about Smith that might inform their course of action.  Natalie responded "no" and did not identify the dyslexia or any other disability or mental issue.  Furthermore, Smith does not articulate a clear theory in his Amended Complaint or his response to Defendants' motion as to the accommodation he should have been provided as a dyslexic individual who allegedly suffers from communication challenges or how he was treated differently from a non-dyslexic detainee (irrespective of any mistreatment by Defendants).  Because Smith has not pleaded any facts that demonstrate he requested accommodation for his dyslexia, that the need for an accommodation would have been open and obvious to Defendants, or plausibly suggesting differential treatment due to his dyslexia, Smith's claims under the ADA and Rehabilitation Act should be dismissed.

**B.      Smith fails to plead a Section 1983 claim against Guadalupe County based on its municipal liability.**

Smith asserts various Section 1983 claims against Guadalupe County based on its failure to properly train its deputies on the use of force and the determination of reasonable suspicion and probable cause.  These claims should also be dismissed.

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, Plaintiffs must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012). Local governments can be sued directly under Section 1983 where the allegedly unconstitutional actions "result directly from a municipal custom or policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that municipalities are liable for constitutional violations where official policy or custom is "the moving force" behind the violation). Liability is not available under the doctrine of *respondeat superior*. *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002). A failure to train police officers can give rise to municipal liability of a local government entity. *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 456 (5th Cir. 2000). To prevail on such a claim, a plaintiff must demonstrate (1) that the local governmental entity's training policy procedures were inadequate, (2) the entity was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the constitutional violation. *Sanders-Burns*, 594 F.3d at 381.

Defendants argue Smith has failed to plead Guadalupe County's municipal liability because Smith's *Monell* allegations are conclusory and do not adequately identify any formal policy or widespread custom or practice underlying the alleged constitutional violations. The undesigned agrees. Smith's allegations regarding Guadalupe County's municipal liability for the alleged Fourth Amendment violations are exceedingly thin. Neither his pleading nor Smith's response to Defendants' motion specifically addresses the policies or customs at issue; instead,

both emphasize the County's general failure to train its employees and its creation of "an environment which authorizes 4th Amendment violations."  There are no specific facts alleged about any policies promulgated by Guadalupe County or even that Guadalupe County lacked appropriate Fourth Amendment policies.  Nor are there specific facts alleged regarding how the policies or customs of Guadalupe County caused Smith constitutional injury.  Absent specific allegations regarding the inadequacy of the training procedures and the essential element of causation, Smith cannot state a plausible claim under *Monell* against Guadalupe County.  *See Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (affirming dismissal of *Monell* claims where plaintiff's pleadings only contained conclusory allegations regarding training deficiencies and county policy and custom).

Nor does the TCOLE training record attached to Smith's Amended Complaint save Smith's municipal liability claims from dismissal.  The training record documents the various trainings Saenz received from 2013 to the present.  The record lists trainings completed by name only, as well as the date of the training and the institution providing the training.  The record does not describe the contents of any training provided.  Smith argues in his response to Defendants' motion that the TCOLE training record establishes that Saenz did not receive any training on the use of firearms until after June 27, 2021, the date of the incident underlying this suit.  Yet Smith's Amended Complaint does not contain any specific allegations about trainings attended by Saenz or even reference specifically the TCOLE record.  Additionally, the TCOLE record documents several trainings that could have concerned firearms—a use of force training and a patrol rifle training, both of which were completed prior to June 27, 2021.  In summary, Smith fails to plead plausible claims against Guadalupe County based on its municipal liability under Section 1983, and the Court should dismiss Guadalupe County from this suit.

**C.**     **Smith pleads plausible claims of malicious prosecution and false arrest against Saenz and Locker.**

Smith asserts claims of malicious prosecution and false arrest against Saenz and Locker pursuant to Section 1983.  Smith claims that Saenz charged him with evading arrest while knowing there was no lawful basis or probable cause for the seizure and arrest.  Smith further alleges Locker should also be held liable for malicious prosecution and false arrest because he was aware of the situation in which Saenz had no lawful basis to contact, stop, seize, and arrest Smith, and yet he authorized Saenz to take Smith to jail and pursue criminal charges.

Defendants argue Smith cannot state a claim of malicious prosecution because no such claim exists under Section 1983, citing the Fifth Circuit's opinion in *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc) (holding that "malicious prosecution" is not a violation of the Constitution or a basis for a claim under Section 1983).  Yet this case was recently overruled by the Supreme Court, which confirmed that a plaintiff may in fact bring a Fourth Amendment malicious prosecution claim under Section 1983.  *Thompson v. Clark*, 596 U.S. 36, 42 (2022); *see also Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (recognizing the overruling of *Castellano*).  Thus, this is not a basis for dismissal of Smith's malicious prosecution claim.

There are six elements of a malicious prosecution claim: (1) an unlawful Fourth Amendment seizure; (2) the commencement or continuance of an original criminal proceeding; (3) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (4) its bona fide termination in favor of the present plaintiff; (5) the absence of probable cause for such proceeding; (6) malice; and (7) damages. *Armstrong*, 60 F.4th at 279. A Fourth Amendment claim of false arrest requires a plaintiff to plead two of these elements (1) an arrest and (2) a lack of probable cause.  *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004).

Defendants do not dispute that Smith has pleaded some of these elements.  Smith alleges he was arrested, formally charged with evading arrest, and the charges were dismissed several weeks later.  Defendants argue, however, that there was probable cause for Smith's arrest because Smith ran from the police.  The Court should reject Defendants' argument and allow Smith's false arrest and malicious prosecution claims to proceed.

Evading arrest is a criminal offense codified at Section 38.04(a) of the Texas Penal Code. A person violates § 38.04(a) "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."  "One of the elements of the offense of evading arrest is that the attempted arrest is lawful."  *Porter v. State*, 255 S.W.3d 234, 236 (Tex. App.—Waco 2008, pet. ref'd) (citation and internal quotation marks omitted).  Smith alleges that he was exercising along Highway 46 when Saenz almost hit him with his police vehicle.  When Smith stopped to look at his phone and rest, Saenz is alleged to have continued to circle and follow him, despite Smith not engaging in any unlawful conduct. Saenz then chased Smith across private property, but Smith alleges that he was unaware that Saenz was following him until Smith reached the cemetery.  (Some of Smith's statements on the video recording suggest he was aware he was being followed and was actively running away from Saenz because he believed he was being chased for no lawful reason.)  Furthermore, Smith alleges that Defendants fabricated the evading arrest charge when they realized that no property owners wished to pursue charges of criminal trespassing.  The Court is required to view the facts in the light most favorable to Smith at this stage of the proceedings.  Accordingly, the Court accepts Smith's allegation that he was being pursued by Saenz for no lawful reason, and that the ultimate charges were intentionally fabricated because the officers could find no other basis to detain him.

In summary, the facts viewed in the light most favorable to Smith include allegations that Smith was arrested without probable cause and with malice.  Smith therefore states plausible claims of false arrest and malicious prosecution.  The Court should therefore deny Defendants' motion as to Smith's claims of false arrest and malicious prosecution and allow these claims to proceed.

**D.**    **Smith pleads a plausible claim of excessive force against Saenz and Gonzalez.**

Smith's Amended Complaint asserts various Fourth Amendment violations based on the conduct of Saenz and Gonzalez in effectuating Smith's arrest and Locker's supervisory responsibility for that conduct.  Smith alleges Defendants engaged in excessive and potentially deadly force and an unlawful search and seizure.  Although Smith's pleading separates these claims under various theories, the undersigned construes Smith's allegations as collective facts underlying his overarching Fourth Amendment excessive force claim.

To bring an excessive force claim under the Fourth Amendment, a plaintiff must plead he (1) suffered an injury (2) that resulted directly and only from the use of force that was excessive to the need and (3) that the force used was objectively unreasonable.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).  Defendants first argue Smith has failed to state a claim of excessive force because he was not physically injured by the arrest.  The Court should reject this argument.  Regardless of whether Smith was physically injured by the seizure and arrest, psychological injuries can be sufficient to state an excessive force claim under the Fourth Amendment.  *Flores v. City of Palacios*, 381 F.3d 391, 400–01 (5th Cir. 2004).  Smith has pleaded that he was mentally traumatized and subjected to sheer terror in addition to suffering from the physical effects of a projectile and chemical irritants.

Defendants also argue that Smith fails to plead the objective unreasonableness of the force used by Saenz and Gonzalez in effectuating the seizure and arrest. The "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). The reasonableness inquiry in excessive force cases is an objective one—the question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation and citation omitted). The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. This test recognizes that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

"The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive." *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). "While a suspect's refusal to comply with instructions may indicate that physical force is justified, officers must also select the appropriate *degree* of force." *Id.* (internal quotations and citations omitted) (emphasis in original). To stay within constitutional bounds, an officer must use force with "measured and ascending" actions that correspond to a suspect's "escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (internal quotation and citation omitted). "Therefore, force may be less justified or unjustified when a suspect engages in passive resistance, as opposed to active resistance." *Joseph*, 981 F.3d at 332–33 (internal quotations and citations omitted).

Construing the pleadings in the light most favorable to Smith, Smith has stated a plausible Fourth Amendment violation—that Defendants used force that was objectively

unreasonable under the totality of the circumstances.  Smith could prove a set of facts consistent with his allegations that would demonstrate that the amount of force employed by Defendants did not correspond to the level of Smith's resistance and was therefore objectively excessive. *See id.* at 332; *Poole*, 691 F.3d at 629.  In evaluating the degree of force employed, courts have placed weight "on the quickness with which law enforcement personnel have escalated from negotiation to force."  *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016).

Defendants argue that the amount of force was necessary because of Smith's "odd and erratic behavior in running along a highway and through private property."  Yet, accepting Smith's allegations as true, the facts before the Court are that Saenz and Gonzalez brandished and pointed loaded firearms at Smith's body when he was seated in a passive cross-legged position in his t-shirt and shorts.  In this position, there was no objective reason to believe that Smith was armed, as he held one empty hand up and the other gripped his cell phone.  Smith looked down at his phone and was screaming for help from the 911 operator when the officers approached him.  Saenz then shot Smith in the face with a pepper ball when Smith did not promptly lie down in response to the officers' screaming orders.  After he was hit, the officers jumped on Smith's back with all of their weight, forcing his face to the ground, handcuffed his arms behind him, and physically searched his person, body, and personal effects.  Additionally, Smith's allegations establish for purposes of ruling on the motion to dismiss that he was not engaged in any unlawful behavior by exercising along a roadway in the middle of the afternoon, and yet Saenz chose to initiate police contact by almost hitting Smith with his vehicle and continuing to encircle and pursue Smith until he had stopped running or exercising.  Although Smith may have run away from Saenz, when Saenz reached the cemetery, Smith was no longer attempting to flee and was seated in a non-threatening position in the grass.  Taking into

consideration the totality of the circumstances, Smith has pleaded a plausible claim of excessive force.  Saenz and Gonzalez escalated the police encounter to a degree and at a speed that was objectively unreasonable in light of the fact that Smith had not given the officers any reason to believe he was armed and was not presenting any threat to the officers or any other person at the time the force was deployed.

**E.   Smith pleads plausible Fourth Amendment claims against Locker for false arrest and malicious prosecution, but not for excessive force.**

Smith has also adequately pleaded a Fourth Amendment violation by Locker.  Again, Section 1983 does not create supervisory liability based on a theory of *respondeat superior*. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  "Rather, a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (internal quotation and citation omitted).  Smith alleges that Locker failed to properly supervise and control Saenz and Gonzalez as to their use of excessive force and directly participated in Smith's malicious prosecution and false arrest.

First, Smith's allegations place Locker at the center of the officers' decision to pursue criminal charges.  Locker arrived on the scene shortly after the use of force, interviewed Smith and Natalie, as well as other persons, and directly participated in the arrest, as well as the probable cause determination.  Accordingly, the Court should not dismiss Smith's false arrest and malicious prosecution claims against Locker because Smith pleads that Locker was personally involved in these alleged constitutional violations.

However, to the extent Smith is attempting to hold Locker individually liable for the acts of Saenz and Gonzalez based on a failure to train or supervise, these claims fail as a matter of law.  As already stated with respect to Smith's theory of municipal liability against Guadalupe

County, Smith fails to adequately plead a failure of supervision or training.  To state a claim against Locker as the supervisor of the other deputies, Smith must plead (1) Locker either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of Smith's rights; and (3) the failure to train or supervise amounts to deliberate indifference.  *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 397 (5th Cir. 2017), as revised (Mar. 31, 2017).  Again, Smith alleges (and the video confirms) that Locker arrived at the scene after the other two officers had already engaged in the alleged excessive force, so Smith is not alleging that Locker was present and able to exercise supervisory control of Sanez or Gonzales in that situation.  Overall, Smith's allegations as to Locker's failure to supervise or train Saenz and Gonzalez are conclusory and need not be credited.  Moreover, when liability is premised on a failure to supervise, such a failure usually gives rise to Section 1983 liability only in situations involving a history of widespread abuse (or the supervisor's direct involvment).  *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982).  Smith's Amended Complaint does not contain any allegations regarding any incidents beyond the single use of force at issue in this case.

**F.     The individual Defendants are not entitled to qualified immunity at this stage of the proceedings.**

Defendants assert that they are entitled to qualified immunity as to the constitutional violations alleged in Smith's lawsuit.  The parties' qualified immunity briefing focuses on the use of force by Gonzalez and Saenz.  Defendants are not entitled to qualified immunity at this stage of the proceedings.

Qualified immunity shields federal and state officials from individual liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged

conduct.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the context of a qualified immunity analysis, the facts are construed in the light most favorable to the party asserting the injury.  *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue.  *Saucier*, 533 U.S. at 206.  Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts not to define clearly established law at a high level of generality.  *See, e.g.*, *al-Kidd*, 563 U.S. at 742.  Rather, the inquiry must be undertaken in light of the specific factual context of the case.  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  The dispositive question is "whether the violative nature of particular conduct is clearly established."  *al-Kidd*, 563 U.S. at 742.  However, there need not be a specific precedent on point that presents identical or even factually analogous circumstances for a defendant to be on notice that their conduct violates the Constitution.  *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (per curiam) (citing *Hope v. Peltzer*, 536 U.S. 730, 741 (2002) ("a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question")).

At the motion-to-dismiss stage, as here, the Fifth Circuit merely requires plaintiffs invoking Section 1983 to plead "specific facts that, if proved, would overcome the individual

defendant's immunity defense." *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992) (internal quotation and citation omitted).  Accordingly, to rebut the qualified immunity of the individual Defendants, Smith's First Amended Complaint must contain allegations that, when viewed in the light most favorable to Smith, if ultimately proved would plausibly show that Defendants' conduct violated a clearly established constitutional right. *Saucier*, 533 U.S. at 206.

The undersigned has already determined that Smith has pleaded a plausible Fourth Amendment excessive force claim against Gonzales and Saenz due to the objectively unreasonable degree of force used on Smith under the circumstances.  The Court must therefore also determine whether, at the time of the alleged wrongful conduct at issue, the alleged violation of the Fourth Amendment was clearly established.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier*, 533 U.S. at 202).  If officers of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity.  *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Although there need not be a case directly on point addressing similar factual circumstances, the unlawfulness of the challenged conduct must still be "beyond debate." *Joseph*, 981 F.3d at 330 (internal quotation and citation omitted).  Again, at the motion to dismiss stage, as here, Smith must plead specific facts that, if proved, would overcome the individual Defendants' immunity defense, because, at the time of the conduct at issue, Saenz and Gonzalez had fair notice that their conduct was unlawful.  *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The Court should find that in 2021 Defendants were on notice that they could not employ a pepper ball gun on a suspect who was not actively resisting officers.  In 2017, the Fifth Circuit held that officers could not invoke qualified immunity as a defense to the use of force on a suspect that was stopped for only a minor traffic offense and who at most had passively resisted the officers.  *Hanks v. Rogers*, 853 F.3d 738, 748–49 (5th Cir. 2017).  The Fifth Circuit found that to escalate the situation by using force when the suspect's verbal and passive physical resistance "was on the decline" was clearly unreasonable.  *Id.*  Similarly, in 2020, the Court held that it was clearly established that it was unconstitutional for officers to employ tasers and batons, punching and kicking a suspect who had committed no crime, was unarmed, posed no threat to himself or others, and was subdued in a fetal and defensive position.  *See Joseph*, 981 F.3d at 333–43.

These cases establish that at "an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance" and whom the officer stopped for a minor traffic violation or for no crime at all.  *See Hanks*, 853 F.3d at 747.  Defendants argue that they were authorized to draw their firearms and deploy a pepper ball gun where the suspect was running in an area that was not a normal jogging area and was running away from the officers because concerns for their own safety and the possibility of a dangerous encounter outweighed the possibility of a lesser use of force.  The Court should reject Defendants' framing of the facts at issue.

As previously stated, although the video attached to the pleadings may establish that Smith was running away from Saenz, at the time Saenz reached Smith at the cemetery, Smith was no longer fleeing or actively resisting the officers.  He was seated in a completely

defenseless posture and was making no threats of any kind.  Rather, he was desperately pleading for help with one hand occupied on his cell phone and the other visibly empty and raised in front of his body.  At no point did Saenz or Gonzalez attempt to negotiate with Smith prior to deploying force.  Viewing the factual allegations in the light most favorable to Smith, any reasonable officer in the position of Saenz or Gonzales had fair notice that the degree of force used under the circumstances was excessive, and neither is entitled to qualified immunity based on the pleadings.  Further, because the Individual Defendants did not brief why they would be entitled to qualified immunity on Smith's malicious prosecution and false arrest claims, they are not entitled to qualified immunity on those claims at this stage either.

### V.  Conclusion and Recommendation

Having considered Defendants' motion, the response and reply, and the governing law, the undersigned **recommends** that the District Court **grant in part and deny in part** Defendants' Motion to Dismiss [#8] as follows:

- The District Court should dismiss all of Smith's claims against Guadalupe County (claims arising under the ADA, Rehabilitation Act, and Section 1983), and Guadalupe County should be dismissed from this suit;

- The District Court should dismiss Smith's Fourth Amendment excessive force claims against Locker;

- The District Court should deny Defendants' motion as to the Fourth Amendment excessive force claims against Saenz and Gonzales;

- The District Court should deny Defendants' motion as to the Fourth Amendment malicious prosecution and false arrest claims against Saenz and Locker.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified

24

mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 22nd day of February, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE