IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RONALD SMITH,                           §
                                        §
            *Plaintiff*,                §          SA-23-CV-00881-OLG
                                        §
vs.                                     §
                                        §
ROBERT LOCKER, HUNTER SAENZ,            §
JIMMY GONZALES,                         §
                                        §
            *Defendants*.               §
                                        §

REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

    This Report and Recommendation concerns Defendants Saenz, Locker, and Gonzales' Motion for Summary Judgment [#31].  All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#10].  The undersigned therefore has authority to enter this recommendation and order pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B).  For the reasons set forth below, the Court has resolved certain evidentiary objections to the summary judgment evidence and will recommend that Defendants' motion for summary judgment be granted in part and denied in part.

## I.  Factual and Procedural Background

    This civil rights action arises out of a police encounter and the arrest of Plaintiff Ronald Smith on June 27, 2021.  Smith's live pleading is his First Amended Complaint [#7], filed after Defendants removed this case from state court.  There are three remaining Defendants in this

case—Hunter Saenz and Jimmy Gonzales (Guadalupe County Sheriff's Deputies) and Robert Locker (Guadalupe County Sheriff's Supervisor) in their individual capacities. The Court previously dismissed Smith's claims against a fourth Defendant, Guadalupe County, due to Smith's failure to plead the County's municipal liability under 42 U.S.C. § 1983. (Order Adopting Report and Recommendation [#25].)

According to Smith's Amended Complaint, he went jogging in the late afternoon in Bulverde, Texas, and was targeted by Deputy Saenz without any lawful basis or reasonable suspicion of illegal activity. (Am. Compl. [#7], at 4–17.) Smith further alleges that Saenz and the other responding officer, Deputy Gonzales, subjected him to excessive force when they brandished their firearms, shot him in the face with a pepper ball, and handcuffed him while pushing him face down in the grass. (*Id.*) Smith claims that Saenz and his supervisor, Deputy Locker, unlawfully arrested Smith for the fabricated charge of "evading arrest" without any probable cause. (*Id.*)

Based on these allegations, Smith asserts various violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983 against Saenz, Gonzales, and Locker based on their individual actions and against Locker in his capacity as supervisor. (*Id.* at 17–19.) The following claims remain in this suit after the Court granted in part Defendants' motion to dismiss—excessive-force claims against Saenz and Gonzales; malicious-prosecution claims against Saenz and Locker; and false-arrest claims against Saenz and Locker. Defendants seek summary judgment on all remaining claims.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Evidentiary Objections

Defendants and Smith both raise objections to the admissibility of certain evidence in the summary judgment record.  For the reasons explained below, Smith's objections to the body camera footage and medical records submitted by Defendants are overruled, Defendants'

objections to Smith's affidavit are partially sustained, and Defendants' objection to the medical records submitted by Smith is overruled. The parties raise additional evidentiary objections to evidence not considered by the undersigned in analyzing Defendants' motion for summary judgment. These objections are dismissed as moot.

**A.    Smith's objections are overruled.**

Defendants have submitted body camera footage from the emergency room where Smith was taken after the excessive-force incident as well as jail intake medical records. Smith objects to the admissibility of this evidence based on privacy concerns. This objection is overruled. Defendants properly filed a motion to seal these exhibits due to the confidential nature of medical records and to satisfy the requirements of HIPAA and the Texas Medical Practice Act. (Mtn. to Seal [#32].)

Additionally, Smith objects to the authentication of the jail medical records by Sheriff Arnold Zwicke, arguing Sheriff Zwicke is not a proper records custodian. This objection is also overruled. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). It must merely be capable of being presented in an admissible form by the time of trial. *See* Fed. R. Civ. P. 56(c)(2) (providing that "a party may object that the material cited to support a dispute or fact cannot be presented in a form that would be admissible in evidence"). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer*, 870 F.3d at 384.

Regardless, there does not appear to be any issue with the authentication of the medical records challenged by Smith. Medical records are routinely admitted as evidence under the business-records exception to the hearsay rule if accompanied by a certification that they were kept during regularly connected business activity for purposes of authentication. *See* Fed. R. Evid. 803(6) (establishing requirements for exception to hearsay rule for records of regularly conducted activity); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) ("Rule 803(6) provides a hearsay exception for records kept in the course of *any* regularly conducted business activity, which would include hospitals.") (emphasis in original). One of the requirements of the business-records exception is that the record is accompanied by a certification by the records custodian "or another qualified witness" complying with Federal Rule of Evidence 902(11) (requiring certification of custodian or another qualified person). *See* Fed. R. Evid. 803(6)(D). The certification must establish the following: (1) the record was made at or near the time by someone with knowledge; (2) the record was kept in the course of regularly conducted activity; and (3) making the record was a regular practice of that activity. *Id.* 803(6)(A)–(C).

Defendants submitted an affidavit by Sheriff Arnold Zwicke, custodian of records for the jail, authenticating the jail medical records. (Zwicke Aff. [#31-2], at 2–4.) Sheriff Zwicke's affidavit attests that the records were kept in the regular course of business by the Guadalupe County Sheriff's Department. (*Id.*) Texas law provides that the sheriff "exercise[s] supervision and control over the jail." Tex. Loc. Gov't Code § 351.041(b). This affidavit satisfies the requirements of Rules 803(6) and 902(11).

**B.    Defendants' objections to statements in Smith's affidavit are sustained in part.**

In support of his response to Defendants' motion, Smith has submitted his own affidavit, in which he includes statements about his alleged injuries.  Regarding his injuries, Smith attests that he had an adverse reaction to the chemical irritants contained in the pepper ball that struck him in the head, which caused him to convulse and vomit at the hospital after the incident and still affects his breathing.  (Smith Aff. [#33-1], at ¶¶ 16, 18.)  Smith also attests that he continues to suffer from severe migraine headaches beginning on the "exact day [he] was pepper sprayed," as well as burning sensations, difficulty breathing and swallowing, back and back pain, and blurred vision.  (*Id.* at ¶¶ 16, 22–23.)  Finally, Smith states that he suffers from depression, embarrassment, and PTSD stemming from the incident and the fear caused by having Saenz and Gonzales point their firearms at him.  (*Id.* at ¶¶ 22–23.)

Defendants object to the affidavit, arguing it is self-serving and contradicted by other competent and reliable summary judgment evidence and should therefore not be considered in evaluating Smith's claims.  A party's own affidavit can create genuine disputes of material fact precluding summary judgment even if the affidavit is self-serving and uncorroborated.  *C. R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 Fed. App'x 439, 443 (5th Cir. 2011) (per curiam).  However, a court is not required to view a nonmovant's self-serving statements favorably if they are "blatantly contradicted by the video record, so that no reasonable jury could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (noting that courts are permitted to "give greater weight" at the summary judgment stage to "facts evident from video recordings taken at the scene").

The summary judgment record contains video evidence from Deputy Saenz's body camera from the night of June 27, 2021, when Defendants took Smith to the Guadalupe Medical

Center Emergency Room to be medically cleared for detention.  (Saenz Body Camera, Ex. G-3.)

Although Smith's affidavit states that he had an allergic reaction to the pepper ball at the hospital

(causing convulsions and vomiting), the video evidence does not depict Smtih having an allergic

reaction, experiencing any respiratory distress, or vomiting.  (*Id.* at Exs. G-3, G-5.)  (Nor do any

of the body cameras of the officers documenting Smith's reaction immediately after the pepper-

ball incident depict any vomiting or respiratory distress, though Smith voices after the incident

during his handcuffing that he was momentarily struggling to breathe but immediately thereafter

is conversant with the officers without distress.)  (*Id.* at Ex. G-2.)  Rather, Saenz's body camera

from the hospital visit documents Smith calmly arriving at the hospital, checking in, and

receiving a medical evaluation.  (*Id.* at Exs. G-3, G-5.)  Although Smith at times refuses to

answer questions and does not willingly cooperate with nursing staff throughout the video, Smith

does not display any physical or psychological distress in the video and does not complain of any

injuries.  (*Id.*)  The only physical incident Smith experienced at the hospital was slight nausea

after drinking a bottle of water provided to address dehydration from being out in the sun all day.

(*Id.*)  Smith was ultimately cleared for his incarceration without notation of any injury by

medical staff.  (Hosp. Med. Records [#31-4], at 26–27.)

Defendants also provided the Court with medical records from Smith's booking at the

Guadalupe County Jail that same night.  (Jail Med. Records [#31-4], at 3–21.)  These records

also do not document any physical or psychological injuries, though they reference Smith's

refusal to answer questions or cooperate with the medical assessment and intake process.  (*Id.*)

The records do, however, note that Smith might have indicated he generally suffers from asthma

and unspecified PTSD.  (*Id.* at 3–21.)

Accordingly, the video evidence and medical records directly contradict Smith's self-serving statements about his injuries in his affidavit. Thus, the undersigned will disregard Smith's statements that he suffered a severe allergic reaction and respiratory issues from the pepper ball on the night of his arrest, but the undersigned will consider Smith's other statements in his affidavit regarding ongoing migraines and PTSD stemming from the incident.

**C.    Defendants' objection to the medical records submitted by Smith is overruled.**

Defendants also object to medical records submitted by Smith, including medical records from medical visits in early 2022, in which Smith sought treatment for persistent migraines, and counseling records from April and May 2024, which reference anxiety and PTSD. Defendants argue that the records are not accompanied by the required certification of their reliability under Rule 803(6), *see supra*, and are therefore inadmissible. Defendants' objection is overruled.

Again, at this stage of the proceedings, Smith's medical records do not need to be authenticated or presented in admissible form; they simply must be capable of being properly authenticated at trial. *Maurer*, 870 F.3d at 384 (citing Fed. R. Civ. P. 56(c)(2)). Defendants are not arguing that the challenged medical records cannot be presented in admissible form at trial, only that the records cannot be authenticated with the affidavit by Smith's attorney, Mr. Cano, attached to Plaintiff's summary judgment response. True, Mr. Cano is not a custodian or other qualified witness who can authenticate the records, and his affidavit does not contain any of the required attestations set forth in Rules 803(6) and 902(11). (*See* Cano Aff. [#33-1], at 193.) However, this is not a basis for excluding the evidence at summary judgment. Smith is on notice that to admit the evidence at trial, he must authenticate the documents by obtaining a certification from a proper records custodian, likely the medical providers' records manager, or another proper witness.

### IV.  Summary Judgment Record

The summary judgment record contains the following disputed and undisputed evidence regarding the police encounter underlying this suit.  According to an Offense Report by Deputy Saenz, he encountered Smith while patrolling Highway 46 in New Braunfels, Texas, on June 27, 2021, at approximately 7:45 p.m.  (Saenz Report [#31-2], at 10.)  Saenz states that he observed Smith "crouched over, fidgeting with something in his hands," and when Saenz passed him "he quickly got up and began to walk towards the fence line," and then "jumped a barbed wire fence and began running into a field."  (*Id.*)  Saenz stated in his report that he believed Smith was attempting to avoid contact with law enforcement or had or was about to commit a crime "by trespassing on property with clearly defined physical barrier to prevent entry/exit."  (*Id.*)

Saenz's body camera confirms that Smith was running through private property adjacent to Highway 46 that evening, and that Deputy Saenz pursued him on foot until Smith stopped on a grass shoulder outside of Guadalupe Valley Memorial Park.  (Saenz Body Camera, Exs. G-1, G-2.)  While running after Smith, Saenz repeatedly yelled for Smith to stop and identified himself as with the Sheriff's Office, but Smith continued to run away from Saenz.  (*Id.*)

Smith's affidavit on the other hand states that Deputy Saenz's vehicle veered off the road and "nearly clipped" him while he was exercising, and in response Smith displayed his middle finger.  (Smith Aff. [#33-1], at 90–91.)  Smith further states that afterwards he rested on the road shoulder, but Deputy Saenz passed him several times, which he thought was odd, and that he "eventually came to rest" in front of Guadulupe Valley Memorial Park Cemetery.  (*Id.*)  Smith's affidavit does not reference Smith fleeing from Saenz across private property as depicted in Saenz's body camera footage, and there is no video footage of the earlier encounters that Smith described.

However, the body camera footage confirms that when Saenz caught up to Smith outside the cemetery, Smith was seated cross-legged on the grass shoulder, in a passive position with his cell phone in his hand.  (Saenz Body Camera, Ex. G-2.)  Gonzales's vehicle arrived at approximately the same time with its lights flashing.  (*Id.*)  Both officers ran towards Smith with their weapons drawn, and Saenz screamed repeatedly for Smith to put his hands up and to show the officers his hands.  (*Id.*)  When Smith did not acknowledge the officers, Saenz directed Gonzales not to use lethal force and indicated he was going to use "less than lethal" force on Smith, exchanging his firearm for his pepper ball gun.  (*Id.*)  As both officers closed in on him, Smith raised one hand in the air with a palm open and kept his other hand on his cell phone to speak to a 911 operator he had called to report being attacked by the police.  (*Id.*)  The officers then continued to yell at Smith, directing him to lie down on his stomach on the ground.  (*Id.*) Smith pleaded for them to hold on, as he yelled at the 911 operator that he had two men with guns on him.  (*Id.*)  When Smith did not drop his phone or lie down, Saenz shot him with a pepper bullet, which struck him in the left temple.  (*Id.*)

At this point, Smith became overwhelmed with panic.  (*Id.*)  Smith continued to scream to the 911 operator that he had been shot and that he had not done anything wrong, and the officers continued to yell at him to lie down.  (*Id.*)  When Smith did not respond to the officers' directions, they approached, roughly rolled him over, handcuffed him, and swept his body for weapons, finding none.  (*Id.*)  During the handcuffing, Smith screamed he could not breathe and that he needed an ambulance and that he was wheezing from the pepper spray's irritants.  (*Id.*) The officers called an ambulance to provide Smith with medical attention, but Smith refused to cooperate with the EMTs when they arrived.  (*Id.*, Locker Body Camera, Ex. I-2.)  Smith was informed that he was being arrested for "evading arrest" and was taken to the hospital for

medical clearance before being transported to the Guadalupe County Jail. (Saenz Offense Report [#31-2], at 11; Arrest Report [#31-2], at 21; Saenz Body Camera, Exs. G-3, G-5.)

The charges against Smith were ultimately dismissed on August 11, 2022, approximately one year later. (Dismissal [#33-1], at 58.) Smith's affidavit states that he suffered serious physical and mental injuries from the incident and lost employment opportunities while his criminal case was pending. (Smith Aff. [#33-1], at 95–96.)

## V. Analysis

Defendants move for summary judgment on all three of Smith's remaining Section 1983 claims premised on a Fourth Amendment violation—claims of malicious prosecution, false arrest, and excessive force. Defendants are entitled to summary judgment on Smith's malicious prosecution and false arrest claims but not his claim of excessive force.

**A.    Defendants Saenz and Locker are entitled to qualified immunity on Smith's malicious prosecution claim.**

Smith asserts a malicious prosecution claim against Saenz and Locker pursuant to Section 1983. Saenz and Locker argue they are entitled to qualified immunity on this claim, and the undersigned agrees.

Qualified immunity shields federal and state officials from individual liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that

his or her conduct violated the statutory or constitutional right at issue.  *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  The acts of Defendants underlying this suit occurred in 2021.  At that time, the Fifth Circuit did not recognize a malicious prosecution claim under Section 1983.  *See Castellano v. Fragozo*, 352 F.3d 939, 954 (5th Cir. 2003) (en banc) (disclaiming existence of malicious prosecution claim under Section 1983).  The Fifth Circuit subsequently acknowledged the overruling of *Castellano* after the Supreme Court expressly recognized the constitutional tort of malicious prosecution.  *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (citing *Thompson v. Clark*, 596 U.S. 36, 42 (2022)).

Accordingly, the right to be protected under the Fourth Amendment from malicious prosecution was not clearly established at the time Saenz and Locker participated in Smith's arrest and prosecution, a time when *Castellano* was still the governing law.  *See Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023).  Because it would not have been clear to Defendants that their conduct violated the Fourth Amendment's protection against malicious prosecution in 2021, they are entitled to summary judgment based on their qualified immunity as to Smith's malicious prosecution claim.

**B.**     **Defendants Saenz and Locker are entitled to summary judgment on Smith's false arrest claim because the independent-intermediary doctrine insulates Defendants from liability.**

Smith also asserts claims of false arrest against Saenz and Locker pursuant to Section 1983.  Smith claims that Saenz charged him with evading arrest without probable cause.  A Fourth Amendment claim of false arrest requires a plaintiff to prove two elements: (1) an arrest, and (2) a lack of probable cause.  *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004).  Probable cause exists when an officer is aware of "reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe" that a

crime has been or will be committed." *Voss v. Goode*, 954 F.3d 234, 238–39 (5th Cir. 2020)
(internal quotation and citation omitted).

Defendants argue they are entitled to summary judgment on Smith's claims of false arrest
because an independent intermediary broke the chain of causation. Under the independent-
intermediary doctrine, "if facts supporting an arrest are placed before an independent
intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of
causation for false arrest, insulating the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208
(5th Cir. 2022) (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)).

The summary judgment record reflects that Deputy Saenz authored an Affidavit of
Probable Cause on June 27, 2021, to obtain a warrant to arrest Saenz for the offense of evading
arrest. (Saenz Aff. [#31-2], at 40.) The probable cause affidavit states the following:

> On June 27, 2021 while on patrol in my clearly marked patrol unit, I
> attempted to make contact with the Defendant, who initially was sitting in
> the crouched position on the shoulder of the roadway in the 3000 block of
> State Highway 46 on the south bound side. As I passed the Defendant as
> to come back around and speak with him he jumped a physical barrier to a
> property which consisted of a barbed wire fence as I got closer. As I
> began to pursue the Defendant, he crossed another physical barrier
> between the two properties and continued to run as I announced I was with
> the Sheriff's Office and for him to stop. The Defendant then attempted to
> conceal himself in the brush. As I attempted to approach the Defendant,
> he ran across State Highway 46 and then sat on the ground. Less than
> lethal force was used to gain his compliance after the Defendant failed to
> obey lawful orders.

(*Id.*) Saenz presented the affidavit to a magistrate, who determined that, based on the affidavit,
probable cause existed for the arrest of Smith and ordered him remanded to the Guadalupe
County Jail. (*Id.*) Smith was thereafter arrested for the offense of "evading arrest/detention" in
violation of Texas Penal Code § 38.04. (Arrest Records [#31-2], at 27.) Because a neutral
magistrate executed a warrant for Smith's arrest based on the probable cause affidavit, the

magistrate was an independent intermediary who interrupted the chain of causation as to Smith's claim of false arrest.

The independent-intermediary doctrine, however, is not absolute. There are two exceptions to the doctrine. *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020). First, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)). Second, officers are not insulated from liability where they "deliberately or recklessly" provide "false, material information for use in an affidavit" or make "knowing and intentional omissions that result in a warrant being issued without probable cause." *Id.* (quoting *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc); *see also Franks v. Delaware*, 438 U.S. 154 (1978).

Smith does not expressly reference either exception in his response to Defendants' motion for summary judgment but appears to be arguing that this case falls within the exception recognized by the Supreme Court in *Malley*. Smith argues that there was no probable cause to charge him with evading arrest for two reasons—he was not actively resisting arrest, and he did not commit any underlying crime to support an arrest. Under *Malley*, the inquiry is "whether a reasonably well-trained officer in [Deputy Saenz's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant." *Malley*, 475 U.S. at 345.

Evading arrest is a criminal offense codified at Section 38.04(a) of the Texas Penal Code. A person violates § 38.04(a) "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." In arguing that no reasonable officer could have believed that he was resisting arrest, Smith cites Section 38.03(a),

the Texas Penal Code provision codifying the offense of "resisting arrest," and case law from Texas courts regarding the degree of resistance required for the conduct of a suspect to constitute "resisting" arrest.  *See* Tex. Pen. Code § 38.03(a) (A person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . . by using force against the peace officer or another."); *Sheehan v. State*, 201 S.W.3d 820, 822 (Tex. 2006) (explaining that "using force against the peace officer" for purposes of "resisting arrest" requires more than passive non-cooperation).  Although this may be a correct statement of the law as to resisting arrest, Smith was not charged with resisting arrest.  He was charged under Section 38.04(a) with evading arrest.  The arguments presented by Smith do not pertain to whether there was probable cause to believe he was evading arrest.

The summary judgment record contains uncontroverted evidence that Smith fled from Deputy Saenz on the evening of June 27, 2021, and that Smith knew Deputy Saenz was a law enforcement officer at the time.  Smith states in his affidavit that he was exercising along Highway 46, when Deputy Saenz nearly clipped Smith with his patrol vehicle, prompting Smith to display the "bird middle finger."  (Smith Aff. [#33-1], at 90–91.)  Smith further states in his affidavit that he noticed that Saenz's cruiser "carried the insignia of what appeared to be a law enforcement agency."  (*Id.* at 91.)  An offense report authored by Saenz states that Saenz was patrolling the 3000 block of State Highway 46 on June 27, 2021, when he observed Smith walking north on the south bound side of the road at approximately 7:54 p.m.  (Saenz Offense Report [#33-1], at 64.)  When Saenz turned around to check on Smith, he saw Smith crouched over, "fidgeting with something in his hands," and then get up and start walking toward an adjacent fence line.  (*Id.*)  According to Saenz, when he tried to make contact with Smith, Smith "jumped a barbed wire fence and began running into a field."  (*Id.*)  Video evidence from

15

Saenz's body camera depicts Saenz running in pursuit of Smith through various fields surrounded by fence lines and repeatedly yelling at Smith to stop, while informing Smith that Saenz was law enforcement.  (Saenz Body Camera, Exs. G-1, G-2.)  Saenz's affidavit further states that Smith continued to run in another field divided by another fence line until he reached Guadulupe Memorial Park where he sat on the ground and took out his cell phone.  (Saenz Offense Report [#33-1], at 64.)  The uncontroverted summary judgment evidence establishes that Saenz personally observed Smith fleeing from law enforcement, i.e. evading arrest.

One of the elements of the offense of evading arrest is that the attempted arrest is lawful. *Porter v. State*, 255 S.W.3d 234, 236 (Tex. App.—Waco 2008, pet. ref'd) (citation and internal quotation marks omitted).  Smith contends that there was no basis for an arrest or detention because he was not committing any underlying crime for which he lawfully could have been arrested.  Saenz's offense report states that Saenz believed, based on his training and experience, that Smith was attempting to avoid contact with law enforcement as he had or was about "to commit a crime by trespassing on property with clearly defined physical barrier to prevent entry/exit."  (Saenz Offense Report [#33-1], at 64.)  Smith argues he could not be committing criminal trespass because he did not remain on private property but instead crossed over private property and ended up on a public easement near a cemetery.  Snith's argument is unavailing.

The elements of criminal trespass in Texas are that: (1) a person, (2) without effective consent, (3) enters or remains on the property or in a building of another, (4) knowingly, intentionally, or recklessly, (5) when he had notice that entry was forbidden *or* received notice to depart and failed to do so.  *See* Tex. Penal Code § 30.05; *Johnson v. State*, 665 S.W.2d 554, 556 (Tex. App.—Houston [1st Dist.] 1984, no pet.).  Again, the uncontroverted summary judgment evidence establishes that Smith crossed onto private property surrounded by barbed wire fencing.

(Saenz Offense Report [#33-1], at 64; Saenz Body Camera, Exs. G-1, G-2.)   The criminal trespass statute defines "notice" that entry was forbidden to include "fencing or other enclosure obviously designed to exclude intruders or to contain livestock."   Tex. Penal Code § 30.05(b)(2)(B).   The fence surrounding the fields Smith entered satisfied the statutory notice requirement of Section 30.05 that entry was forbidden.   *See Jackson v. State*, 3 S.W.3d 58, 63 (Tex. App.—Dallas 1999, no pet.)   The statute does not require one to remain on property to be liable for criminal trespass; remaining on the property is only relevant if there was no notice that entry was forbidden, a scenario not at issue here.

Because Deputy Saenz observed Smith evading arrest or detention while trespassing on clearly boundaried private property, the *Malley* exception to the independent-intermediary doctrine does not apply.   There is no basis for a finding that Deputy Saenz should have known that his affidavit failed to establish probable cause for the belief that Smith had trespassed on private property and was fleeing from law enforcement, such that Saenz should not have applied for a warrant.   *See Malley*, 475 U.S. at 345.   Therefore, the independent-intermediary doctrine insulates Defendants from liability for false arrest, and Defendants are entitled to summary judgment on Smith's false arrest claim as well as his malicious prosecution claim.

**C.    A genuine issue of material fact remains on whether Defendants Saenz and Gonzales are entitled to qualified immunity on Smith's excessive force claim.**

Smith's final claim is a claim of excessive force.   Smith alleges that Saenz and Gonzales violated the Fourth Amendment by using excessive force when effectuating Smith's arrest.   To prevail on his excessive force claim, Smith must prove that (1) he suffered an injury (2) that resulted directly and only from the use of force that was excessive to the need and (3) that the force used was objectively unreasonable.   *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).   Defendants' arguments regarding Smith's excessive force claim are two-fold:

Smith cannot prevail on his claim because he did not suffer an injury; and Defendants are entitled to qualified immunity because the amount of force used was reasonable.

Although there is no "significant injury" requirement to support a Fourth Amendment excessive force claim, the injury upon which an excessive-force claim is based must be more than a *de minimis* injury. *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017); *Harper v. Harris Cnty., Tex.*, 21 F.3d 597, 600 (5th Cir. 1994). However, the Fifth Circuit has characterized the injury requirement as "a sliding scale, not a hard cutoff." *Beuhler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022). "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (alternation in original) (quoting *Brown v. Lynch*, 524 Fed. App'x 69, 79 (5th Cir. 2013) (additional internal quotation and citation omitted)). In other words, "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Brown*, 524 Fed. App'x at 79 (additional internal citation and quotation omitted)). However, regardless of the type of injury at issue, the injury caused by excessive force must result "directly and only from the use of force that was clearly excessive to the need." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (emphasis added).

Smith claims in his affidavit that he suffered multiple injuries from Defendants' use of force—an allergic reaction (labored breathing, convulsions, and vomiting) from the pepper ball, severe migraine headaches beginning on the day of the incident, and psychological injuries (depression and PTSD). (Smith Aff. [#33-1], at 92, 94–95.) As previously noted, the undersigned has not considered Smith's statements in his affidavit that the use-of-force incident caused an

allergic reaction, as these statements are clearly contradicted by the video evidence of the incident and his visit to the hospital, as well as hospital and jail records. However, Smith's statements in his affidavit regarding migraines and psychological injuries in the weeks, months, and years after the incident have not been directly contradicted by the proffered video footage or other evidence. The Court therefore considers these statements as proper summary judgment evidence.

Smith corroborates the statements in his affidavit regarding these injuries with medical evidence of treatment for migraines and records from counseling sessions regarding his PTSD. (Medical Records [#33-1], at 106–56.) These records repeatedly reference Smith's diagnosis of PTSD and link the PTSD to the use-of-force incident underlying this case. (*Id.* at 119–20.) The records also reference migraines and a diagnosis of post-concussive syndrome, linking the chronic headaches to Smith being shot in the head with a pepper ball in 2021. (*Id.* at 132–34.)

The Fifth Circuit has repeatedly emphasized that "even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Viewing the evidence in the light most favorable to Smith, the undersigned finds that Smith has provided sufficient evidence of more than a *de minimis* injury caused by the alleged excessive force to survive summary judgment.

Moreover, Defendants cannot prevail on their argument that the force employed to effectuate Smith's arrest for evading arrest was reasonable under the totality of the circumstances. The "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). The reasonableness inquiry in excessive force cases is an objective one—the question is "whether the officers' actions are 'objectively reasonable' in light

19

of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation and citation omitted). The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. This test recognizes that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

"The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive." *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). "While a suspect's refusal to comply with instructions may indicate that physical force is justified, officers must also select the appropriate *degree* of force." *Id.* (internal quotations and citations omitted) (emphasis in original). To stay within constitutional bounds, an officer must use force with "measured and ascending" actions that correspond to a suspect's "escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (internal quotation and citation omitted). "Therefore, force may be less justified or unjustified when a suspect engages in passive resistance, as opposed to active resistance." *Joseph*, 981 F.3d at 332–33 (internal quotations and citations omitted).

Defendants Saenz and Gonzales have not established that they are entitled to qualified immunity based on the reasonableness of the force employed against Smith. A jury could readily conclude from the video evidence in the record that the force used by Defendants was "clearly excessive" to its need and therefore not reasonable. *Peña*, 879 F.3d at 619. It is undisputed that Saenz and Gonzales brandished and pointed loaded firearms at Smith's body when he was seated in a passive cross-legged position while holding one empty hand in the air and gripping a cell

phone with the other hand.  In this position, there was no objective reason to believe that Smith was armed (or about to deploy a firearm).  Saenz then shot Smith in the face with a pepper ball when Smith did not immediately lie down in response to the officers' screaming orders.  Smith was not threatening the officers.  Smith was no longer fleeing from the officers.  Smith was passively seated on the ground in a completely defenseless posture.

Officers cannot constitutionally use a taser on a "non-threatening, compliant subject." *Boyd v. McNamara*, 74 F.4th 662, 668 (5th Cir. 2023), *cert. denied sub nom. Johnson v. Boyd*, 144 S. Ct. 562 (2024).  Moreover, "[w]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified."  *Trammel v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (holding that it was excessive for officers to tackle non-fleeing, non-violent, non-aggressive individual whose only resistance was pulling his arm away from officer's grasp).  Here, the only resistance presented by Smith was passive.  Rather than attempting to calm Smith and secure his compliance through verbal or other less-invasive interventions, Saenz and Gonzales rapidly escalated the police encounter, despite the fact that Smith had not given the officers any reason to believe he was armed, was not presenting any threat to the officers or any other person, and was not actively resisting any police command.  Based on the foregoing, Defendants Saenz and Gonazles are not entitled to qualified immunity on Smith's excessive force claim.

## VI.  Conclusion and Recommendation

Having considered the motion, response, and reply, summary judgment record, and governing law, it is hereby **recommended** that Defendants Saenz, Locker, and Gonzales' Motion for Summary Judgment [#31] be **GRANTED IN PART** as to Smith's malicious prosecution and false arrest claims and **DENIED IN PART** as to his excessive force claims.  Accordingly,

Defendant Locker is entitled to summary judgment, and only the excessive force claims against Saenz and Gonzales should proceed to trial.

### VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 5th day of November, 2024.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE